JOHN MURPHY *et al.*

*v.*

THE PEOPLE *ex rel.* T. D. Weiennett.

*Filed at Ottawa March 22, 1887.*

1. SPECIAL ASSESSMENTS—*the rule of uniformity.* Equality and uniformity of benefits and burdens in special assessments for public local improvements of streets by cities and villages, are not essential under the present constitution and legislation on the subject.

2. SAME—*confirmation—of its conclusiveness.* A judgment of confirmation of a special assessment is conclusive upon all lot owners whose property is assessed, as to all matters of defence that might have been interposed to prevent the confirmation, provided such owners are in court by the service of

proper notice or by voluntary appearance. But if there is no proper notice, the judgment of confirmation will not conclude any lot owners except such as appear and contest the application to confirm.

3. If, upon an application for the confirmation of a special assessment, the court has jurisdiction, its judgment will conclude the land owner from questioning the legality, validity or regularity of any of the proceedings had prior thereto, on application for judgment of sale of the premises.

4. SAME—*by whom warrant to be issued—effect of a change in the law after judgment.* On April 28, 1885, judgment of the county court was rendered confirming a special assessment for improving certain streets, at which time the law made it the duty of the county clerk to certify the assessment roll and judgment to the city clerk, and the latter was then required to issue a warrant for the collection of the assessment. On July 1, 1885, an amended law took effect, which required the county clerk to issue the warrant: *Held,* that the warrant was properly issued by the city clerk, and that the proceeding was governed by the law in force at the date of the judgment of confirmation, there being nothing in the amendatory act indicating a different purpose.

5. SAME—*interest—Revenue law construed.* Section 177 of the Revenue law, as amended in 1885, giving one per cent per month interest on delinquent taxes, does not apply to delinquent special assessments for local public improvements, and it is error to allow interest on such assessments.

APPEAL from the County Court of Peoria county; the Hon. L. W. JAMES, Judge, presiding.

Messrs. JACK & TICHENER, and Messrs. McCULLOCH & McCULLOCH, for the appellants.

Mr. I. C. PINCKNEY, City Attorney, and Mr. H. W. WELLS, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This is an appeal from a judgment of the county court of Peoria county, rendered against certain lots, to pay a special assessment for the improvement of Hamilton street, in the city of Peoria. Various objections were filed by appellants to the application for judgment, which were all overruled, and judgment rendered as prayed for by the collector.

On the application to confirm the assessment, we held in *Murphy* v. *City of Peoria*, 119 Ill. 509, that the notice, as appeared from the affidavit of service, was not sufficient to confer jurisdiction of the persons of those who did not appear, viz.: Mrs. Norris Pitt, Belle C. Topping, August Siebold, W. G. Buchanan, E. G. Calligan, D. J. Calligan, and W. J. Dobbins. Hannah M. Powell also occupies the same position. The rights of these parties have not been affected by the judgment of confirmation, and on the application for judgment against their lands, they have rights which can not be invoked by those who appeared on the application to confirm the assessment.

Sections 30 and 31, of article 9, of the statute, provide that objections may be filed and a hearing had, on application for confirmation of an assessment. Section 39, article 9, chapter 24, of the Revised Statutes, provides: "Said report, (*i. e.*, of the local to the county collector,) when so made, shall be *prima facie* evidence that all forms and requirements of the law in relation to making said return have been complied with, and that the special assessments mentioned in said report are due and unpaid. And upon the application for judgment upon such assessment, no defence or objection shall be made or heard which might have been interposed in the proceeding for the making of such assessment, or the application for the confirmation thereof."

Under sections 30 and 31, *supra*, full opportunity is given the land owner to interpose any objection which may show the invalidity of the proceedings anterior to the application for a confirmation of the assessment; and under the plain language contained in section 39, the judgment of confirmation is conclusive.

This is not, however, a new question in this court. In *Schertz* v. *The People ex rel. Taylor*, 105 Ill. 27, the question arose whether a judgment of confirmation was conclusive, and in disposing of the question we said: "If, upon an ap-

plication for the confirmation of a special assessment, the court has jurisdiction to render the judgment of confirmation, such judgment will conclude the land owner from questioning any of the proceedings had prior thereto, on a subsequent application for a judgment and order for sale of the premises." In the case under consideration, we entertain no doubt in regard to the jurisdiction of the court as to all of the parties who appeared, and, under the statute and former decisions of this court, that judgment is conclusive in regard to all questions which might have been raised, affecting the validity of the proceedings. So far, therefore, as all of the appellants are concerned who appeared on application for confirmation of the assessment, they are concluded in regard to all proceedings anterior to the confirmation. As to the other appellants, who were not notified of the application for judgment of confirmation, as provided by the statute, and who are not concluded by that judgment, we will consider the questions raised, involving the validity of the proceedings.

Sections 1 and 2 of the ordinance of the city, under which the assessment was made, are as follows:

"Section 1. That Hamilton street, in said city, from the north-west side of Monroe street to the east side of North street, be graded, graveled and improved the whole of said distance, and of a width between the lines of curbstones on each side thereof, sixty-four feet, in the following manner, viz.: Said street from the north-west side of Monroe street to the north-west side of Perry street, the whole of said distance, of a width of sixty-four feet between the lines of curbstone on each side thereof, with good gravel, of the thickness of fifteen inches, the foundation of good coarse gravel, the surface of good clean gravel, and to be well rolled with a heavy roller; from the north-west side of Perry street to the east side of North street, and of a width of twenty feet on each side thereof, shall be graded and graveled with good gravel, of a thickness of fifteen inches, the foundation to be of good coarse gravel,

the surface of good clean gravel, and to be well rolled with a heavy roller. The center of said street, from Perry to North streets, as aforesaid, except at street intersections, and of a width of twenty-four feet, shall be graded, and sodded with good sod, and there shall be constructed, on each side of such grass plat or park, cobble stone or concrete gutters, three feet in width, the whole distance of such grass plat or park.

"Section 2. That a sewer shall be constructed in said street of eighteen-inch vitrified pipe, from the north-west side of Monroe street to the north-west side of Globe street, and of fifteen-inch vitrified pipe from the north-west side of Globe street to the east side of North street."

Section 3 provided that the improvement should be made by special assessment upon all property especially benefited.

Under section 6 of the ordinance, commissioners were appointed to make an estimate of the cost of the improvement. The commissioners made a report, submitting an estimate of the cost of the improvement. The city council then directed a petition to be filed in the county court, which was done, for the appointment of commissioners to make the assessment, as required by the statute. The court appointed the commissioners, who made the assessment and filed their report, which was finally confirmed in the county court.

Before alluding to certain evidence in regard to a general system of sewerage, introduced by appellants, it may be proper to state that the city of Peoria is acting under a special charter, enacted in 1869. (Laws of 1869, page 149.) The city, however, has adopted article 9 of the general Incorporation act, in relation to cities, villages and towns. The charter authorizes the city council to lay off the city into districts, to be drained by principal, lateral or tributary sewers and drains, having reference to a general plan of drainage, by sewers and drains, for the whole city. It also provides for levying and collecting taxes within such districts, for the purpose of carrying out such general system of drainage.

In 1871, the legislature passed an act which provides "that the legislative authority of any such city which now has, or may hereafter have, established a system of sewerage for such city, shall have power, annually, to levy and collect a tax upon the real and personal estate of any such city, not to exceed one mill on a dollar, for the extension and laying of sewers therein, and the maintenance of such sewers, which shall be known as the 'Sewerage Fund tax,' and shall be levied and collected in the same manner that other general taxes of any such city are levied and collected." (Laws of 1871, page 754.) In 1883 this statute was re-enacted, with power to levy a tax not exceeding three mills on the dollar. Laws of 1883, page 68.

Under the act of 1871, the city of Peoria, in 1878, adopted a general system of sewerage for the whole city. Section 3 of the ordinance provided: "The general plan and system of sewerage prepared by the city engineer, under the direction of the special committee on permanent grade and sewerage, and shown upon the sewerage map herewith, is hereby adopted, subject to such modifications, in detail, as the proper committee or commission may hereafter recommend and the city council may adopt."

The plan, as shown by the report of the city engineer, was to drain the whole city. Under this system, taxes were collected annually, and the work progressed, from year to year, as fast as the revenue collected would allow, and, as we understand the evidence, the general system of sewerage adopted was strictly adhered to, and no effort was made to construct any sewer or drain by special assessment, until this proceeding was inaugurated to improve Hamilton street.

Under this state of facts, it is contended, in the argument, that as the city of Peoria adopted a general system of sewerage, to be paid for by general taxation, under which sewers have been constructed from time to time, the city can not now, for the purpose of constructing a sewer on Hamilton street,

depart from that system, and pay for the sewer, in whole or in part, by special assessment, because, by so doing, the principle of uniformity in the assessment and collection of taxes, enjoined by the constitution, would be violated. We are free to concede, that, under the constitution of 1848, the position assumed might be maintained. Under that constitution, this court held, in *Chicago* v. *Larned*, 34 Ill. 203, and in *Chicago* v. *Baer*, 41 id. 306, that the doctrine of equality or uniformity of taxation applied as well to special assessments for improvements, like the one in question, as to any other form of taxation. But those decisions were based upon sections 2 and 5, of article 9, of the constitution of 1848, which, upon examination, will be found to enjoin uniformity and equality, whether the tax may be of a general or local character. But section 9, article 9, of our present constitution, is entirely different from the two sections of the constitution of 1848. It is as follows: "The General Assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of contiguous property, or otherwise. For all other corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes; but such taxes shall be uniform in respect to persons and property within the jurisdiction of the body imposing the same." Section 116, article 9, of the act in relation to cities, villages and towns, passed in pursuance of the section of the constitution, *supra*, provides: "That the corporate authorities of cities and villages are hereby vested with power to make local improvements by special assessment, or by special taxation, or both, of contiguous property, * * * as they shall by ordinance prescribe." It will thus be seen, that the first clause of article 9 of the constitution, relating to local improvements by special assessment, or by special taxation, contains no provision requiring uniformity, and the same is true of the section of the statute passed under that section of the constitution. For all other corporate purposes,

taxes must be uniform in respect to persons and property, but as to making local improvements by special assessment or special taxation, the framers of the constitution of 1870 seem to have purposely omitted the requirement of uniformity, and courts have no power whatever to add a requirement which has thus been dispensed with.

The same question here involved arose in *White* v. *People*, 94 Ill. 604, and it was there held, that the doctrine of uniformity and equality of taxation did not apply. It is true, that the question involved there was a special tax, but the section of the constitution was examined and construed in reference to its bearing not only on a special tax, but on a special assessment, and we are entirely satisfied with the conclusion there announced.

Other questions in regard to the regularity of the proceedings have been raised, but they are disposed of in *Murphy* v. *City of Peoria*, 119 Ill. 509, and we refer to the opinion in that case as an expression of our views on those questions.

It is also claimed, that the proceedings subsequent to the judgment of confirmation are void, and conferred no jurisdiction on the county court to render the final judgment. The warrant for the collection of the special assessment, it is said, was not issued by the proper officer. The judgment of confirmation was rendered April 28, 1885, and section 35, of article 9, at that time required the clerk of the county court to certify the assessment roll and judgment to the clerk of the city. The section also required the clerk of the city to file such certificate in his office, and issue a warrant for the collection of such assessment. This statute was followed, and it is conceded that the proceedings conform to it. But the argument is, that an amendment to the Revenue law in force July 1, 1885, so changed section 35 that it became the duty of the county clerk to issue the warrant, instead of the city clerk. There is nothing in the amendment which indicates the slightest intention to affect any proceeding insti-

16—120 Ill.

tuted before the amendment took effect, and we are inclined to hold, as this judgment was rendered prior to July 1, 1885, and as the judgment of the county court in terms required the county clerk to certify to the city clerk, as required by . section 35, that the city clerk might, as provided in the law under which the judgment was rendered, issue the warrant.

In the judgment rendered by the county court against the several lots, interest was allowed on the amount of the several special assessments, and this is relied upon as error. Unless some provision of the statute authorizes interest to be computed on the amount of the special assessments, it is quite evident the court had no power to allow it. In 1885, the legislature passed an act amending the Revenue law in certain things, section 177 of which provides, that "all real estate upon which taxes remain due and unpaid on the 10th day of March, annually, * * * shall be deemed delinquent; and all such due and unpaid taxes shall bear interest after the 1st day of May, at the rate of one per cent per month, until paid or forfeited." The section also provides, that all collections on account of interest shall be paid into the county treasury, to be used for county purposes. We do not think that the word "taxes," as used in the act, was intended by the legislature to include special assessments, but it related merely to ordinary taxes levied for State, county and municipal purposes. Surely, the legislature could not have intended to raise a fund by special assessment, to be placed in the county treasury, to be used for county purposes, as is provided by the last part of the section. Indeed, the power to raise money in that way for such a purpose might be well doubted. Section 44, article 9, provides that the general revenue laws in reference to proceedings to recover judgments for delinquent taxes, the sale, the execution of certificates of sale, and deeds, and the force and effect of such deeds, and all other laws in relation to the enforcement and collection of taxes, and redemption from tax sales, shall apply in cases

of special assessments. Section 40 of the same statute provides, that in obtaining judgment for special assessments, and making sale, the officer shall be governed by the general Revenue law of the State. But while the course to be pursued in the one case is the same as in the other, we do not think a recovery of interest can be sustained unless expressly authorized by the statute,—and neither of the sections, in terms, or even by implication, seems to authorize it. Nor do we find any section of article 9 of the Revenue law which provides that interest may be recovered on an application for judgment against delinquent lands for the non-payment of a special assessment, and in the absence of such a statute we are aware of no rule of law which will sanction a recovery of that character. Section 177, *supra,* which provides for interest at the rate of one per cent per month on delinquent taxes, is highly penal, and it should not be so construed as to include any tax not clearly falling within its terms.

It is also claimed, that in several instances judgment was rendered against one lot for assessments levied upon others. We shall not stop to make a critical examination of the record in regard to these objections, as they can be remedied upon another trial in the county court. The judgment should, of course, follow the assessment, and should be entered up against each separate lot for the amount such lot is specially benefited, as shown by the assessment.

For the errors indicated, the judgment will be reversed and the cause remanded.

*Judgment reversed.*