# W. E. COLLINS et al., Appellants, v. A. JAICKS COMPANY.

### In Banc, July 7, 1919.

1. **PRACTICE:** Judgment on Pleadings: Ascertainment of Cause of Action. In an action brought by property owners for the cancellation of special tax bills, wherein the pleadings consist of the petition, an answer and a reply denying the allegations of the answer, the sole question, on the filing by defendant of a motion for judgment on the pleadings, is whether the petition states a cause of action entitling plaintiffs to the relief asked.

2. **STREET IMPROVEMENT:** Maintenance and Repair: Benefit Assessments. Under the present charter of Kansas City the city has power by ordinance to direct that the cost of repairing and maintaining an existing boulevard be paid by special assessments against the abutting property, or said cost may be paid out of the funds belonging to the park district in which the improvement is made or out of the general park fund; and the exercise by the city of its option to authorize the cost to be paid by special assessments will not be held to be illegal, unless the act is clearly unreasonable, oppressive and subversive of the rights of the property owners.

3. ————: General Power of Cities: Conclusiveness of Exercise Upon Courts: Fraud. The power of cities to grade and improve streets is legislative and continuing, subject to such restraints as may be imposed by valid charters; and the power being conferred by charter, and the charter provision being in harmony with constitutional and statutory authorization, the courts will not interfere, either directly or collaterally, with municipal action, in the absence of fraud. The governing body of the city, and not the courts, is the judge of the necessity and expediency of the exercise of the power conferred, and the fraud that will authorize the courts to interfere with municipal action is not that it has resulted in individual hardship, or that in working out a general scheme an individual burden without corresponding benefit is imposed, but only an act so unreasonable, oppressive and subversive of the rights of citizens in the general purpose declared, as to clearly indicate an attempted abuse rather than a legitimate use of the power conferred.

4. ————: Part of Street: Inequality of Non-Uniformity. A city having charter power to improve or repair streets, and to "pay for

such improvement or any part thereof" out of its general funds or by special assessments against abutting property, may pay for repaving a portion of a boulevard out of its general fund, and at a later time provide that the cost of repaving another portion shall be paid by special assessments; and in the absence of fraud, it will not only be presumed that the city authorities had good and sufficient reasons for proceeding by different methods in the two proceedings, but there was no such inequality or lack of uniformity as denied to the abutting property owners the equal protection of the laws.

5. ———: Exemption from Subsequent Taxation: Contractual Right. The charter and ordinance under which a street was improved do not constitute a contract with abutting property owners who paid taxes therefor, that their property will not be burdened with taxes to pay for subsequent repairs or repaving. The statute, or a charter in harmony therewith, conferring upon a municipality power to provide for the construction, repair and maintenance of streets, may be changed, so as to provide a different method of paying for the improvement, or so as to repair an improvement already made, and such change in the law does not constitute an impairment of any supposed contract between the city and the abutters, who paid for an earlier improvement, that their property will not be sujected to taxes to pay for a later improvement or repairs.

6. ———: Maintenance: Tax Bills Prima-Facie Regular. Special tax bills issued for the improvement of a boulevard import prima-facie validity under the charter of Kansas City, and are evidence of the liability of the property for the amount thereof; and an allegation in the petition that the resolution authorizing the improvement provided that the boulevard shall "be paved the full width thereof with bituminous pavement macadam" does not justify the conclusion that the tax bills were issued for maintenance work. Besides, the charter provides for the maintenance of a boulevard by special assessments.

7. ———: Change in Charter: Omission of Exemption Right: Impairment of Contract. A provision in the city's charter at the time the boulevard was paved, to the effect that when a boulevard has been constructed at the expense of the adjoining property it shall thereafter be maintained at the expense of the park district in which it is situated or out of the general park fund, did not create a contract right with abutting owners that their property would be exempt from special assessment for improvements made after the charter provision was annulled, or inhibit the annullment of such provision; nor was such exemption kept alive by a clause in the subsequent charter that "the repeal of any law by the provisions of this charter shall not in any wise affect

any right acquired or accrued thereunder, nor shall this charter in any wise affect the right acquired or accrued under the previous charter." The operative force of the provision in the original charter prevailed so long as that charter was in existence, but no longer, and "the right acquired thereunder" did not prohibit the city, by a new charter, to provide a different method for paying for street improvements.

Appeal from Jackson Circuit Court.—*Hon. Joseph A. Guthrie*, Judge.

AFFIRMED.

*Griffin & Orr* and *R. B. Middlebrook* for appellants.

(1) The allegations in plaintiffs' petition specifically set up that the work in controversy is maintenance and repair and defendant by demurring to this admits the correctness of this statement for the purposes of this argument. (2) The city had no power to issue special tax bills for maintenance work. Payment for maintenance work should be paid for solely out of the maintenance fund of the park district in which Linwood Boulevard is located, which fund is generously provided for by the charter, and the abutting property should not bear the expense of maintenance and repairs. Section 31, Article 13, Charter of 1909, authorizing the issue of special tax bills, is general in its nature, covering every conceivable kind of work, including even bridges and culverts, while Sections 33 and 34 of said article are special in their nature, being expressly and specifically designed to regulate and provide for the raising and expending of a maintenance fund to take care of the maintenance and repair of boulevards and to set bounds upon its size. In the case at bar the city proposes to ignore all these special restrictions and maximums and just issue special tax bills to cover the entire cost of repairs. (3) A special provision applicable to a particular subject shall prevail over a general provision that may be inconsistent therewith. Roth v. Gabbert, 123 Mo. 32; Poor v. Watson, 92 Mo. App. 96; Ruchen-

berg v. Railroad, 151 Mo. 85; City of Springfield v.
Stark, 93 Mo. App. 76; Camp v. Wabash Railroad, 94
Mo. App. 280; State ex rel. v. Roach, 258 Mo. 552;
State ex rel. Lindell Hotel Co., 9 Mo. App. 453. (4) If
the charter confers the power to impose special tax
bills on some abutting land and to entirely relieve other
abutting land similarly situated of that burden as con-
tended by respondent, then the owners of the burdened
land are denied the equal protection of the laws within
the meaning of Section One, Article 14, Federal Con-
stitution. 8 Cyc. 1073; Cotting v. K. C. Stock Yards,
103 U. S. 107. (5) The charter of 1889, as amended in
1895, contained the following section: "Provided fur-
ther, that when any parkway or boulevard has been con-
structed at the expense of the adjoining property, such
parkway or boulevard shall thereafter be maintained
at the expense of the Park District in which the same
is situated or out of the general park fund." Charter
1889, art. 10, sec. 31. While this charter was in force,
plaintiffs relying on this section, invested in boulevard
land and expended large sums for originally constructing
this boulevard (said expenditures being set forth in their
petition) and tax bills were issued therefor and duly
collected by the city and paid by the abutting property.
The present city charter, as adopted in 1908, omitted the
proviso above quoted, and plaintiffs contend that the
attempt in the case at bar to burden their adjoining
property with special tax bills for maintenance of a
boulevard already constructed, is violation of their con-
stitutional right. Art. 12, sec. 19, Mo. Const. To sub-
ject these lands to the cost of maintenance and repairs
is to "impose a new liability in respect to considerations
already past," and the same can not lawfully be done
by adopting a new charter, any more rightfully than it
could be done by the Legislature. R. S. 1909, sec. 9710.

*Clarence S. Palmer* for respondent.

(1) The provisions of the present charter authorizing
the re-pavement of a boulevard and assessment of cost

against abutting property, is not nullified by reason of the fact that the prior charter gave no such right. The provision of the former charter did not constitute a contract right of plaintiffs: (a) because there was lack of a consideration; (b) because such a contract would have been contrary to the provisions of the Constitution of 1875, relating to the exemption of property from taxation. 4 Dillon on Mun. Corp. (5 Ed.) 2581; Ladd v. Portland, 32 Ore. 272; State v. Mayor of Newark, 37 N. J. L. 424; Carstens v. Fon du Lac. 137 Wis. 465; Tilden v. Mayor, 56 Barb. (N. Y.) 361; Bradley v. McAtee, 7 Bush (Ky.) 667; Rochester v. Ry. Co., 182 N. Y. 99; Houck v. Drainage District, 248 Mo. 394; Miners Bank v. Clark, 252 U. S. 20; Wisconsin & Michigan Ry. Co. v. Powers, 191 U. S. 379; Grand Lodge v. New Orleans, 166 U. S. 143; Paige & Jones, "Taxation by Assessments," sec. 172. (2) The improvement in question was not maintenance but repaving. Jones v. Plummer, 137 Mo. App. 337; Bliss on Code Pleading (2 Ed.), sec. 418; Kleekamp v. Meyer, 5 Mo. App. 444. (3) Plaintiffs waited until the work was completed and they had received its benefits, and are, therefore, estopped from proceeding in equity to ask that the contractor shall receive no pay for his work. The Planet Co. v. Ry. Co., 115 Mo. 620; Jaicks v. Merrill, 201 Mo. 91; Gibson v. Owens, 115 Mo. 258; Hellenkamp v. Lafayette, 30 Ind. 192; Palmer v. Stump, 29 Ind. 329; Lafayette v. Fowler, 34 Ind. 146.

WALKER, J.—This is an action brought by property owners against a contractor for the cancellation of certain tax bills issued by Kansas City for paving Linwood Boulevard from Troost Avenue to Prospect Avenue. The pleadings consist of the petition, the answer and the reply. At the trial, the defendant filed a motion for judgment on the pleadings, which was sustained; and plaintiffs appealed. As the reply denied the allegations of the answer, the sole question was whether the

petition stated a cause of action entitling the plaintiffs to the relief asked.

The petition, after pleading the corporate existence of certain parties plaintiff, alleges their respective ownership of certain tracts of land therein described, and that tax bills have been issued to the defendant in payment of improvements made on Linwood Boulevard. The date of the issue of these tax bills is not stated, nor their respective numbers or amounts. The existence of Linwood Boulevard from Troost Avenue to Prospect Avenue, the portion of the boulevard paved, is alleged to have been at all times under the control and management of the board of Park Commissioners of Kansas City; that, in 1900, the city authorized the pavement of Linwood Boulevard from Troost Avenue to Michigan Avenue, and, in 1909, provided for the pavement of Linwood Boulevard from Michigan Avenue to Benton Boulevard (a point farther east than Prospect Avenue), and that said work was done and tax bills issued in payment thereof, which were paid by the owners of land fronting on the boulevard. Section 31 of the Charter of 1899, as amended in 1895, which authorized the improvements made in 1900 is set out; that on August 4, 1908, Kansas City adopted a new charter. Certain provisions of this charter are pleaded; among others, Section 33, Article XIII, which provides that the maintenance fund for parks and boulevards may be assessed against all the land, exclusive of improvements in the respective park districts, and that all vehicle taxes collected in Kansas City shall be used exclusively for the construction, maintenance, repairs, etc., of parks, boulevards, etc., under the control and management of the Board of Park Commissioners.

Section 34, Article XIII, of the Charter, is also set out, which provides for a maintenance fund of ten cents per front foot on all the land fronting on boulevards or parkways.

It is further pleaded that the levy of two and a half mills upon each dollar of valuation of the real

estate in Kansas City was levied for the year 1914; that certain sums from the vehicle license were received for that year, and that a special assessment of ten cents per front foot on the land fronting upon all boulevards was levied, and in addition, that the Common Council for the year 1914 appropriated the sum of $62,980 for improving parks and boulevards for the year 1914, and for general expenses, as provided by Section 35, Article 13, of the Charter, and that the maintenance tax and the ten-cent tax and the general taxes were all contributed to by the plaintiffs, as owners of real estate. This is followed by a conclusion of law that the funds specified were the only funds available for the improvement of Linwood Boulevard.

Plaintiffs then allege that in violation of the Charter of 1908, the Board of Park Commissioners adopted a resolution, April 27, 1914, providing "that Linwood Boulevard from a line eighteen inches east of the east line of the street car track in Troost Avenue, to a line eighteen inches west of the west rail of the street car track in Prospect Avenue, be paved the full width thereof with bituminous pavement macadam, and that the approaches to the cross streets be paved with asphalt," and that said work be paid for by the issue of special tax bills; that the Common Council, by Ordinance No. 11918, approved June 23, 1914, ordained that Linwood Boulevard should be paved as provided in said resolution, and that the work be paid for by special tax bills; that Section 12, Article 18, of the Charter of 1908, relating to the effect of the adoption of the new charter upon existing rights or liabilities, and that the issue of tax bills against plaintiffs' property was in violation of said Section 12, and further alleges that plaintiffs purchased their property relying upon the rights, privileges and exemptions supposed to be contained therein.

That the work as actually done "consists of putting a top dressing on said boulevard," and that this is what is properly, ordinarily and regularly known and desig-

nated as maintenance and repairs, as that term is used in the charter and in ordinary parlance; but that said work, though done in accordance with plans and specifications therefor, was, in reality, a maintenance or repair of said thoroughfare.

That a portion of Linwood Boulevard, extending from Prospect Avenue east to Benton Boulevard, had, at some time prior to the work under Ordinance No. 11918, "been maintained and repaired with identically the same material and in precisely the same manner as the work done under Ordinance No. 11918, on that portion of said Linwood Boulevard hereinbefore described, upon which plaintiffs' properties do abut," and that this act of the city constituted a discrimination in violation of the charter and of the Constitution of the United States.

The petition then alleges that plaintiffs' property could not be lawfully assessed for this work, and that the imposition of the tax was contrary to the provisions of the Charter of Kansas City in force when the boulevard was originally paved (in 1900), and contrary to the spirit of the provisions of the Charter of Kansas City now in force.

The acceptance of the work by Kansas City through its proper officials and the apportionment and issue of the special tax bills to the defendant is stated, and that said tax bills purport to be liens against the plaintiffs' respective properties.

Article 12, Section 19, of the Constitution of Missouri, is then quoted, which prohibits the General Assembly from passing retrospective laws or imposing on the people of any county or municipal subdivision a new liability in respect to transactions or considerations already passed.

Finally, it is alleged that plaintiffs are denied the equal protection of the law, in violation of the Constitution of the United States, and are deprived of their property without due process of law, in violation of the

Constitution of Missouri, and judgment is asked for the cancellation of the tax bills.

I. The burden of this petition, upon which appellants' right of action depends, is that the work in controversy was that of maintenance and repair, and that the city had no power to issue special tax bills for this character of work, which should have been paid for out of the maintenance fund of the Park District in which Linwood Boulevard is located, and not by a levy upon the abutting property.

Repair of Street.

A portion of Linwood Boulevard between Prospect Avenue and Benton Boulevard had theretofore, under a former charter (Sec. 31, Art. X, Kansas City Charter of 1889, as amended in 1895), been paved. This section had a limitation on assessing the cost of boulevard, avenue, or street improvements against abutting property owners, and provided that after having once been paved, they should thereafter be maintained at the expense of the Park District, or the improvement was to be paid for out of the general park fund.

The tax bills, the payment of which is here contested, were issued to pay for the paving of Linwood Boulevard from Troost to Prospect Avenues. An ordinance authorizing this improvement had theretofore been passed, under Section 31 of Article 13 of the present charter of Kansas City. The portions of said section of the charter having reference to the matter at issue, are as follows: "The Board of Park Commissioners shall have power to cause any road, parkway, boulevard or avenue, or part thereof, which may be under its control and management, to be graded, regraded, paved, re-paved, curbed, re-curbed, guttered, re-guttered, or otherwise improved, repaired and maintained . . . with such material as the said board may determine, and may pay for such work or improvements, or any part thereof, out of the funds not otherwise appropriated, belonging to the park dis-

trict in which said work or improvement is done or made, or out of the general park fund; Provided, however, That if the Board of Park Commissioners shall, by resolution, determine that any such work shall be done, and that the payment of the whole or any part thereof be made in special tax bills, the Common Council shall have the power, by ordinance, to ratify and confirm the action of said board, and authorize such work to be done, in which case and when so ratified the Board of Public Works of said city shall apportion or cause to be apportioned the cost of said work or improvements, and issue special tax bills therefor, or for any portion thereof, so ordered to be paid in tax bills, in the same manner and with the same effect as the cost of similar work or improvements is apportioned and tax bills in payment therefor issued in such city for public improvements or work upon streets not under the control or management of such Board of Park Commissioners.''

It will be seen that this section does not contain the limitation found in the former charter (Sec. 31, Art. X, Charter of 1889, as amended 1895), in regard to the manner of payment of the cost of street improvements, but provides that such cost may, as determined by the Board of Public Improvements, be paid out of the Park fund or by the issuance of special tax bills, if so authorized by a resolution of the board. Incidentally it may be stated that there was a compliance with this requirement. The comprehensive nature of this section is apparent from its use of all of the terms employed in designating the streets of a city, viz.: avenues, boulevards, roads and parkways.

The power of the board to thus provide the manner in which the cost of such improvements may be paid for having been defined by the charter, it remains to be determined whether its provisions relative thereto, are valid.

Preliminary to a discussion of the immediate question here seeking solution, it is not inappropriate

that reference be made to the general power of the city through its proper instrumentalities to make such improvements as are here contemplated. Under the present charter, it is provided that: ''The city shall have power to acquire and cause to be made all public improvements designated in this article, to pay therefor, in whole or in part, out of the general fund, or in whole or in part by special assessments, and to make and levy, assess and collect special assessments to pay therefor, and to issue special tax bills to evidence such assessments.'' [Sec. 1, Art. VIII, bot. p. 308; present charter of Kansas City.]

The trend of judicial construction is that in the exercise of a power of this character, the courts should not either directly or collaterally interfere with municipal action in the absence of fraud. A general declaration of this rule is found in McCormack v. Patchin, 53 Mo. 33, in which it is held that the power to grade and improve streets is a legislative and continuing power, subject to such restraints as may have been imposed by the charter. It may be exercised from time to time as the wants of the municipality may require; and as to the necessity or expediency of the exercise of this power, the governing body of the municipality, and not the courts, is to be the judge; that the power to compel property owners to pave generally extends to requiring them to repave when so directed by the proper municipal authority. The rule as thus announced was reaffirmed in Farrar v. City of St. Louis, 80 Mo. 379, where it was held, that the power to pave the streets of the City of St. Louis and to charge the cost of such improvements against abutting property, conferred by certain sections of the charter of that city, and the mode of the exercise of this power under a designated ordinance, was not in conflict with the State Constitution.

The Farrar case is especially rich in its references to earlier Missouri cases discussing and defining the powers of municipalities in the exercise of the taxing power for the improvement of streets subject only

to the limitations stated, viz.: those forbidden by the Constitution or the general laws of the State.

The later case of Skinker v. Heman, 148 Mo. 349, reasserts the doctrine of the freedom of action, in the absence of fraud, of municipal authorities in providing by ordinance in compliance with the charter, for the issuance of tax bills for a new sidewalk.

In no case have we found the rule more clearly and conclusively stated than in Heman v. Schulte, 166 Mo. 409. This was a suit on a sewer tax bill. Defendant objected to its payment on the ground that his property had no immediate access to the sewer, and hence should not have been included in the benefit district. In holding that the action of the city council was conclusive in including the property in the district, the court said, at page 417: "Not only is it the rule in this State . . . 'that when the matter of establishing sewer districts is intrusted by the Legislature to the common council, its action in the premises is conclusive in a collateral attack,' but the rule generally stated is, that where a municipal body vested with the exercise of a power, acts, its acts under that power, in the absence of fraud, are conclusive upon the courts, whether the attack made thereon is collateral or direct, and the fraud that will authorize the court's interference in the matter of municipal action, is not that the power exercised or the ordinance passed has resulted in an individual hardship in its execution, or that in the working out of the general scheme designed by an ordinance an individual burden is imposed without a corresponding benefit conferred (a necessary incident to any system of general taxation or special assessment yet devised for governmental maintenance and support); but only in those cases where the act of the municipal body is so unreasonable, oppressive and subversive of the rights of the citizen in the general purpose declared, as to clearly indicate and leave but one inference, that of an attempted abuse rather than the legitimate use of a power enjoyed; and of this qualified and limited as-

sertion of right in the courts to interfere with municipal legislation, much doubt is felt.''

A parallel ruling is found in Jennings Heights Co. v. St. Louis, 257 Mo. 291, which was an action to cancel tax bills for sewers on the ground of fraud, and that the sewers as constructed were larger than necessary. In ruling on these contentions, the court said: ''It has been uniformly held that the action of the city legislature in pursuance of charter powers, in establishing a district to be benefited by sewers or other public improvements so as to justify a special assessment against the property lying within the district, is conclusive, in the absence of any evidence that it was procured by fraud or proof that it is manifestly arbitrary or unreasonable, or that the assessment is palpably unjust or oppressive.''

The following cases announce the same general doctrine: Moberly v. Hogan, 131 Mo. 19; McGhee v. Walsh, 249 Mo. 266; French v. Barber Asphalt Co., 181 U. S. 324.

We had occasion in St. Louis v. United Railways, 263 Mo. l. c. 455, in what is sometimes designated as the ''Mill Tax Case,'' to discuss somewhat elaborately the reasonableness of municipal enactments and, as necessarily incident to that discussion, the extent of the power of municipalities in regard thereto. The conclusion deduced from a review of numerous authorities was that, if an ordinance, as in the case at bar, was enacted authorizing a tax under a power conferred by a city's charter, and not in contravention of organic law, it will be held valid and the courts will be slow to interfere with its operative force; that municipal corporations are primarily the sole judges of the necessity of ordinances and the courts are loth to review their unreasonableness, if passed in strict accord with an express grant (p. 456).

II. The presumption attending the acts of city officers in the exercise of the power here in question is

pertinent in this connection. We said, most recently

**Inequality.** in McGhee v. Walsh, 249 Mo. 1. c. 294, that "we must, prima-facie, presume that they [the city officers] acted rightly, and we must presume that, in the future, they will so continue to act, and that they will promptly do and perform their several duties, under the charter of the city.''

The foregoing was but a reaffirmance of the earlier case of Seaboard Nat. Bank v. Woesten, 147 Mo. 1. c. 481, where we said: "It may be said here, that municipal officers, under the charter of St. Louis are selected, presumably, on account of their fitness and integrity. They have no private ends to subserve. We should, therefore, presume that their intentions are honest, and that, in the performance of their public duties, they deal fairly and justly with the citizen and property owner.''

While in terms this has reference to a particular municipality, the general application of the rule is beyond question.

Despite the general power thus conferred upon municipalities, the latitude of its exercise and the reluctance of courts to interfere with same, it is nevertheless contended by appellants that their property should not be assessed because owners of property on another part of the street previously improved had not been assessed, and that the burden of taxation was therefore not equalized, and that the ordinance authorizing same was consequently invalid as a denial of the equal protection of the laws, within the meaning of Section 1 of Article XIV of the Federal Constitution. The ruling of the St. Louis Court of Appeals, in Kemper v. King, 11 Mo. App. 1. c. 127, 129, is apposite in determining whether the contention here made is sound. In the Kemper case, a portion of a street had been paved and the abutting property assessed therefor. Later another portion—that involved in the opinion—was paved. The abutting owners in the second improvement contended that their assessments should

27—279 Mo.

be equalized with assessments made on other portions of the street, since the street was an entirety, and that owners of property thereon should be treated alike, and should pay at the same rate. The court refused to sustain this contention, since the two sections of the street had been improved at different times, and were therefore different and distinct improvements which might be separately considered, as to the council seemed best. In ruling upon the question (p. 127.) the court said: "We hold that when a municipal corporation is clothed with a general power to improve its streets, it is a matter of discretion, judicial or legislative in its nature, for the city council to determine when, in what manner, and to what extent any street improvement shall be made; that in the exercise of this discretion the city council is not bound to contract for the improvement of an entire street in order to acquire the right to charge the cost of such improvement upon the abutting property owners; but that they may, in their discretion, contract for the improvement of the street for any number of blocks, or for the length of a single block.; and. that this is a discretion which can not be revised by the judicial courts, unless possibly in extreme cases where there has been manifest abuse." And at page 129: "Public improvements must go on; and if the courts of justice, in their anxiety to protect property owners from a reckless or oppressive exercise of this power, hamper its exercise with unreasonable or impracticable rules, it will result that municipal corporations will not be able to let out contracts for such improvements, at a cost which fairly represents their value, and that none will bid for such contracts except at prices at which they can afford to assume the speculative chances of unfriendly litigation."

Rulings of courts of last resort in other jurisdictions affirm the doctrine announced in the Kemper case.

The case of McChesney v. Chicago, 152 Ill. 543, 38 N. E. 767, identical in principle with the case at bar, gives affirmative expression to the rule. There the city

had previously extended certain water mains and paid for same out of general water department funds. They now propose to make further extensions to be paid for by assessments against abutting property. An appeal was taken from the confirmation of such assessments, but the court supported them and held that such a change in the method of paying for extensions was not discriminative or oppressive.

In Murphy v. People, 120 Ill. 234, 11 N. E. 202, a sewer system had been paid for out of general city funds. The cost of the present extension was assessed against abutting property. The objection that this was not uniformity was rejected by the court.

In Shelby v. Burlington, 125 Iowa, l. c. 352, suit was brought to enjoin the city from improving a street out of general funds because previously such improvements had been paid for by assessments against abutting property. The court held that: "Appellant's argument, carried to its logical end, would tie the hands of the Legislature for all time. That is to say, having adopted the theory of special assessments, it could never depart therefrom; and, vice versa, if it authorized payment for street improvements out of the general city funds, it could never resort to special assessments. This, of course, cannot be the law."

In the case of Ottumwa Brick Construction Co. v. Ainley, 109 Iowa, 386, 80 N. W. l. c. 511, the city provided for paving a certain street to be paid for by special assessments. Some of the property on the street not being worth anything, the city guaranteed the tax bills issued against such property, and this in effect amounted to payment by the city for that portion of the improvement. This was objected to by the other property owners assessed for this improvement. It was held that the city may thus pay part of the cost of the improvement out of its general funds. In so ruling, the court said: "There is nothing in the law to prevent a city, whose finances will admit of so doing, from paying for improvements like that in question out of

the general fund. If it can lawfully pay for a whole, it can for a part."

In the case at bar, Kansas City had previously provided for the repaving of a portion of Linwood Boulevard and paid for the same out of the general fund. At a later time, in an entirely different proceeding, it provided for repaving another portion of the Boulevard to be paid for by special assessments against the abutting property. The city had been given specific power to proceed by either method. No showing of fraud was made or suggested, and it must be presumed that the city authorities had good and sufficient reasons for proceeding by different methods in these two different proceedings. Their decision in the matter should be conclusive, for any other rule would tie the hands of the city and impede, if not prevent, public improvements.

III. It is further contended by necessary implication from the allegations of the petition, although not definitely so stated, that the ordinance and charter provision under which it was enacted, by virtue of which the earlier improvement' of a portion Contract Exemption. of Linwood Boulevard was made, constituted a contract with abutting property owners who had paid taxes therefor, which will be impaired if the same property is burdened with taxes for the present improvement. The difficulty confronting appellants in attempting to sustain this contention is that a statute conferring power upon a municipality to provide for the construction, maintenance or repair of streets does not constitute a contract. In Dillon on Munic. Corp. (5 Ed.) p. 2581, the rule is thus declared: "Charter provisions, which only confer authority upon the municipality to make original construction or paving of the city streets at the expense of the abutters, and which require the city to bear the expense of reconstruction and repaving, do not constitute a contract with an abutter who has paid an assessment for

original construction or repaving, that his property shall be exempt from assessment for repaving or reconstruction, and the legislature may repeal or amend such provisions at pleasure without impairing any contract right of the abutter or affecting any vested right.''

Our own court follows the unbroken current of authority, as thus announced. In Houck v. Drainage Dist., 248 Mo. 1. c. 394, a statute in force at the time of the original organization of the district provided for an assessment to be made and determined according to benefits found. Later, the law was changed so as to authorize a board of supervisors to levy on each acre of land in the district not to exceed twenty-five cents per acre. In discussing the validity of the change thus made, the court said: ''It is contended that the section in question is void because it creates a rule of taxation not in existence at the time the defendant drainage district was organized, and the plaintiffs became members of it, and it is therefore retrospective as to them and impairs the obligation of contracts constituted by its charter . . . We do not hesitate, however, to say that the charter of a public corporation does not constitute a contract with its members that the laws it was created to administer will not be changed; and the State is still at liberty, as to them and the corporation, to continue its efforts to improve its methods of taxation with respect to these subjects.''

Further, to the same effect, in Miners Bank v. Clark, 252 Mo. 20, 1. c. 32, we said: ''Did the city, by accepting the deed from Clark in 1901, contract away its right to later order said street improved at the expense of the abutting property. owner, even though the grantor in said deed be the property owner when the improvement is later made? Unless the law constituting its charter gives such right, a city cannot contract away its right and power to levy special assessments for street improvements, and thereby create an exemption from such assessments. . . . The

charter of cities of the third class does not give such power. In fact the legislative right to give such power might well be doubted—a point however, which we do not decide. It is true, as asserted by appellant, that a city of the third class may acquire title to land for street purposes; but we know of no rule which authorizes the city to surrender, as the purchase price of a street, its right to order that street improved in any manner authorized by law. If, therefore, the city did dispose of its right to order the street improved in the manner exercised in the present suit, it could by properly exercising that power issue valid special tax bills.''

In Tilden v. Mayor, 56 Barb. (N. Y.) l. c. 361, the Court of Appeals of New York said; ''The supposed contract lacks one essential element of a valid agreement, viz., a consideration. By the statute of 1813, the mayor, aldermen and commonalty were authorized, among other things, to direct the paving of streets, and to assess the expense upon the property owners or occupants of houses and lots benefited. Under this provision the owners could have been compelled to pay the expense of the pavement laid down in 1824, and therefore the promise of the corporation to bear the expense of future repairs and pavements was without consideration. The owners lost nothing by what occurred; they simply paid what by law they could have been obliged to pay, and it has never been held that the performance of a legal duty, or the payment of a legal liability, furnished any consideration to support a promise.''

In Ladd v. Portland, 32 Ore. 271, 51 Pac. 654, under a state statute, it was provided that after a street in East Portland had been improved, under and by virtue of the provisions of the chapter in which that section appeared, thereafter that street or any part thereof should not be subject to be again improved, but might be repaired. A street in East Portland was improved under that law, and the cost

charged against abutting property owners. Afterwards East Portland was consolidated with the City of Portland. In 1893 the consolidated city was given a new charter, all vested rights being preserved. Under the new charter the council was authorized to improve any street, or part thereof, and assess the cost on the abutting property owner. The street in question was improved under this provision of the charter and plaintiff sought to enjoin the collection of assessments on account thereof, relying on the provision of the old charter of East Portland under which the original improvement was made. The Supreme Court of Oregon in sustaining a judgment of the lower court refusing an injunction, said, at page 275; "The power to assess the costs of the improvement of a street upon abutting property is embraced within the sovereign power of taxation primarily in the Legislature, but which it may constitutionally delegate to local municipal governments, with or without restraints or limitations; but it is never presumed to be relinquished unless the intention to relinquish is declared in clear and unequivocal terms. [Railroad Co. v. Maryland, 10 How. 394.] And even then, if the exemption is not supported by some consideration, it may be revoked at any time. [Rector of Christ Church v. County of Philadelphia, 24 How. 300.] The charter of East Portland, under which the first improvement was made, was a partial delegation of such power to the city, and, when once exercised, was exhausted—not, however, by reason of any contract between the public and the lot owner, nor because the power of taxation in the State was not adequate to require an assessment for their reimprovement of the street, but because the power delegated to the city had by its express terms ceased to exist. And how can this provision of the charter be tortured into a contract? It does not purport to be one, for it makes no offer of exemption to the landowner, either expressly or impliedly, in consideration of the performance of some voluntary act on his part; nor does it ask or

agree to accept anything from him which the State could not have unconditionally exacted. The assessment of the cost of improving the street in front of his property was an exercise of soveignty, and a proceeding *in invitum*. He was simply required to discharge a duty which he owed to the public, and the performance of which cannot by any show of reason be construed into a consideration moving from him to the State upon which a contract can be supported. The validity of assessments for local improvements is sustained on the theory of special benefits corresponding in value to the cost of the improvement, and so the property owner receives, in theory at least, full value for the money exacted of him; and therefore, plaintiffs' predecessor, in paying the assessments made against his property for the first improvement of the street, sacrificed no legal right, nor did he make any extraordinary or unusual contribution to the public. He simply paid for the special benefits conferred. The manifest purpose of the provision of the charter under consideration was to define the mode and extent of the power of the council in the matter of street improvements, and the limitation on the exercise of such power was a mere concession to the citizen, and an act of grace, and not a contract by which the State forever relinquishes the sovereign power of taxation. It was a limitation voluntarily imposed by the Legislature upon the powers of the city, which that department of the State government could remove at any time public policy or the interests of the municipality might seem to demand, and bound the State only so long as the statute remained unrepealed.''

In Carstens v. Fon du Lac, 137 Wis. 465, 119 N. W. 117, property owners sought to enjoin the city from selling assessment certificates against property abutting on a street, which certificates had been issued for paving thereon. The law under which the paving was done provided for the charging of two-thirds of the cost to abutting property, and one-third to the city, and

added: "Provided, however, that the provisions of
this sub-division shall not apply to a second or sub-
sequent repaving, macadamizing or graveling of any
street which has been heretofore or which shall be
hereafter paved, macadamized or graveled, and the
whole or any portion of the expense of such improve-
ment shall have been borne directly by the lots or
parcels of land fronting or abutting on the portion of
the street so improved." Subsequently, under a gener-
al charter law, the city repaved the street and at-
tempted to charge it to the property owners. In sus-
taining the dissolution of a preliminary injunction, the
Supreme Court at page 470, said: "The compliance
with a statutory duty enjoined upon the lot owners
did not create a contract by operation of law which
exempted the plaintiffs from further special assess-
ments for the cost of street paving. [City of Roches-
ter v. Rochester Ry. Co., 182 N. Y. 99, 70 L. R. A. 773.]
Neither did the 1885 statute give any vested right
to exemptions from further special assessments on ac-
count of repaving. At best, all the law did was to pro-
hibit such assessments as long as it remained in force.
It was subject to amendment in this regard, and was
amended by the adoption of the portion of the general-
charter law which related to street improvements in
lieu of the provisions of the special charter."

The rule announced in the cases cited and abstract-
ed, that the charter of a municipality does not consti-
tute a contract with its members that the laws it was
created to administer will not be changed, is stated
with sufficient definiteness and declared with such
unanimity of opinion, that it is unnecessary to do more
than cite, in addition, some of the numerous cases
from other courts in which it has been approved; and,
as a corollary thereto, that a municipality may by ap-
propriate legislation continue its efforts to improve
methods of taxation with respect to the subject here
under consideration: State v. Mayor of Newark, 37
N. J. L. 415; Bradley v. McAtee, 7 Bush (Ky.) 667;

Wis. & Mich. Ry. Co. v. Powers, 191 U. S. 379; Grand Lodge v. New Orleans, 166 U. S. 143.

IV. It is further contended that this improvement is maintenance work, and that it should have been paid for out of the funds of the Park District for that purpose, in which the boulevard is located. This, plainly put, is an assumption not justified by the record. The petition alleges that the special tax bills were issued to pay for the improvement of Linwood Boulevard. These tax bills import prima-facie validity, and are evidence of the liability of the property for the charges made therein. It is expressly provided in Section 24 of Article VIII of the present city charter (compilation of 1909, bot. p. 339) "that every tax bill shall in any suit thereon be prima-facie evidence of the validity of the bill, the doing of the work and of the furnishing of the material charged for, and of the liability of the land to the charges stated in the bill." This authorizes the presumption that the proceedings leading up to and consummating in the issuance of the tax bills were regular and proper. If we look to the resolution under which the work was authorized, as disclosed by the petition, we find it is expressly alleged that the boulevard shall "be paved the full width thereof with bituminous pavement macadam, and the approaches to the cross streets with asphalt;" and that the ordinance for the work should provide, as it did, for the doing of same as provided in the resolution. In the presence of these allegations, it must be presumed that the charter provision requiring plans and specifications of the work as thus indicated, was, in the absence of any allegation of failure, adopted, or in other words, that the procedure conformed to the requirements of the law. This being true, the conclusion follows that this constituted an improvement or repaving of the boulevard rather than a mere maintenance, and that the contention of appellants is more of a conclusion of the pleaders, not

*Maintenance.*

admitted by the motion for a judgment on the pleadings, than a statement of a fact. It is elementary that only facts well pleaded are admitted by a demurrer or motion which raises an issue of law. [State ex rel. U. S. Fidelity Co. v. Harty, 208 S. W. 835; Brennan v. Cabanne Avenue M. E. Church, South, 192 S. W. (Mo. Sup.) 982; Novinger Bank v. St. Louis Union Tr. Co., 189 Mo. App. 826.]

Furthermore, the only allegation of fact in the petition in regard to the character of the work is that wherein it is stated that it consisted of "putting a top dressing on said boulevard." This, according to the usual signification of the words employed, means resurfacing, which is a paving or repaving, and not maintenance. [Jones v. Plummer, 137 Mo. App. 337.] However, a complete answer to this contention is that whether this work be classified as maintenance or a paving or repaving, the city has the same authority in one case as in the other. Under Section 31 of Article 13 of the charter, supra, the payment of the cost of one may be provided for in the same manner as the other, viz.: by special assessment.

V. A resume of the contentions here made against the validity of this proceeding is, that under Article 10, Section 31, of the Charter of Kansas City of 1889, a boulevard, after construction, can only be maintained at the expense of the park district. This section is as follows: "Provided, further, that when any parkway or boulevard has been constructed at the expense of the adjoining property, such parkway or boulevard shall thereafter be maintained at the expense of the park district in which the same is situated or out of the general park fund." In support of this contention, it is urged that the former work upon the boulevard having been done under this section, a contract right was thereby created with abutting property owners that all subsequent work would be done under the same authority; and despite the fact that

*Accrued Right.*

other means for paying for like work were provided for by a subsequent charter, that said section remained operative and exclusive as to improvements on the boulevard. We have shown that this section did not create a contract right, and that such a right was not impaired by the adoption of the new charter; and that the operative force of the section only prevailed so long as the charter of which it was a part was in existence, no longer. This being true, the provisions of the present charter, Section 12, Article 18, Charter of 1909, bot. p. 482, does not admit of the construction given it by appellants in that no such "right or liability was acquired or accrued" under the former charter, as is meant by this section, which is as follows: "The repeal of any law by the provisions of this charter shall not in anywise be so construed as to affect any right or liability acquired or accrued thereunder by or on the part of the city or any person or body corporate. And this charter shall not in any manner affect any right, lien or liability accrued, established or subsisting under and by virtue of the previous charter or any amendments thereto . . . Nor shall this charter be in any wise so construed as to affect the right or liability acquired or accrued under the previous charter and amendments thereto, or on the part of the city or any person or body corporate."

The interpretation sought to be given Section 31 of Article X of the former charter, and the application thereto of Section 12 of Article 18 of the present charter, would absolutely prevent any change in the new charter which imposed any other or different obligations upon persons or property of a city, than those theretofore existing. This is foreign to any reasonable construction of the law on this subject. The right of cities to frame their charters and, as a consequence, to change them, is a continuing right (Morrow v. Kansas City, 186 Mo. 675), which would be nullified under appellants' construction.

We find no further contentions entitled to our consideration.

For the reasons stated, we are of the opinion that the petition does not state a cause of action, and the judgment of the trial court is affirmed.

It is so ordered. All concur, except *Woodson, J.,* absent.