**CITY OF ST. LOUIS, Missouri, Respondent,**

v.

**Paul F. BRUNE, Appellant.**

**No. 58550.**

Supreme Court of Missouri,
Division No. 2.

March 10, 1975.

Jack L. Koehr, City Counselor, William Kornfein, Asst. City Counselor, St. Louis, for plaintiff-respondent.

J. E. Sigoloff, St. Louis, for defendant-appellant.

HENRY I. EAGER, Special Commissioner.

The defendant appeals from a conviction for the violation of a St. Louis City ordinance designed to prevent lead poisoning in dwelling units. He raises, though somewhat inadequately here, the constitutional validity of the ordinance. The issue was raised in the trial court. On that ground we accept jurisdiction.

The ordinance, 56091, approved January 27, 1972, repealed a prior ordinance and provided in substance (in so far as necessary here) as follows: that its purpose was "to detect, treat and prevent lead poisoning resulting from the internal consumption (including without limitation ingestion, inhalation and absorption) of lead-bearing substances, which internal consumption is hereby declared to constitute a serious public health hazard"; that 'lead-bearing substance' [is] any paint, varnish, lacquer * * * which contains One Percent (1%) or more by weight of metallic lead * * *"; that no person shall use or apply such substances to certain designated surfaces or objects; that an "exposed surface" is any interior or exterior surface of a dwelling or dwelling unit to which children may be commonly exposed; that the Health Commissioner may inspect dwellings and dwelling units for lead-bearing substances in or upon "exposed surfaces" (and "shall" do so where lead poisoning has been reported), remove samples, forward them for laboratory analysis and, upon a determination that lead-bearing substances are present, give notice in writing (of which there is no question here); that if such "exposed surfaces" are not treated as required within 14 days of such notice, then the ordinance "shall have been violated" and the Commissioner shall proceed to prosecute; that lead-bearing substances shall be either removed or securely and permanently covered, in a manner which will result in the safe elimination of "flakes, chips, debris and other material," and that the Commissioner shall determine the manner of treatment and may issue rules and regulations thereon.

Upon inspection of the premises in question (Apt. 2W 5136 Delmar) on December 22, 1972, by a city sanitarian or inspector, he found "peeling or cracking or flaking" paint in eleven places, interior and exterior; these involved walls, windows and doors. He took samples, putting each one in a separate box and designating the place from which it came. The inspection was made at the request of the mother of a child "that had been tested for lead poisoning." Upon analysis five of the samples were found to contain lead in excess of

# 14

one per cent, and were so reported. The inspector then had a notice prepared and mailed on January 17, 1973, stating the violations and requiring correction within 14 days. On February 2, 1973, he went back, inspected the place, and found that nothing had been done. A different inspector visited the premises on March 5, 1973, checked the reported violations, and found that no work had been done. She testified that "a child there had been tested for lead and had elevated lead in his blood." On March 9, 1973, another notice was sent to defendant, extending the time for correction to March 16th. On April 16, 1973, another inspector went out and, according to her testimony, found that no work had been done; another letter was sent, but on May 2nd no work had been done. The prosecution followed.

The defendant testified: that he gave the original notice to his workman-contractor and told him to do the work; that it was done within the 14 days, but that the workman had to "go back" on some of it. That man testified: that he did the work within 14 days, but had to do some of it over; that this was in the "spring," but that he could not remember the dates; that some of the work was done when they were "in court with that" (presumably on these proceedings). Apparently he burned off the paint in most of the offending places. It is obvious that the trial court did not believe the evidence, conclusory as it was, that the corrections were made within 14 days. Still another inspector found the work only partially done on June 6th; he followed it up, and it was finally completed about June 20, five months after the original notice.

There was medical testimony for the city as follows: that lead poisoning is a serious health hazard, and it is "epidemic" in St. Louis; that it is particularly dangerous to children who crawl about, explore, and eat paint chips, or chew on painted windowsills or rails; that the principal danger is from ingesting the material, and this occurs in the older housing units; that very serious and permanent results are frequent in children, including retardation and other brain damage; that even one per cent of lead in paint is not safe; that the paint should be removed or covered; that children frequently visit or are kept in homes or apartments where they do not live and are thus exposed; that poisoning is more likely where there is peeling or chipping of paint, but that solid paint can be and is chewed; that in a children's clinic 14% of the patients were found to have abnormal lead levels.

The Health Commissioner testified to the methods required for correction, i. e., remove the lead paint if on woodwork, panel up to four feet if on walls; that painting over it is not sufficient, for it will come through and chip or peel again; that children bite into windowsills, etc.; that generally samples are only taken when the paint is chipping or peeling.

Defendant's points are, as somewhat condensed: (1) That the ordinance is arbitrary and unreasonable in that the *means* provided for its enforcement bear no real and substantial relationship to its declared purpose, because it requires no findings, (a) of conditions which would reasonably result in lead being internally consumed, and (b) that the premises be occupied by children. This is presumably a claim of the violation of due process rights. (2) That the ordinance is arbitrary and unreasonable because it fails to establish sufficient standards and delegates to the Health Commissioner the power to determine the standards and conditions which result in a violation. (3) That the ordinance is vague, unreasonable and arbitrary in that the offense is not described in such terms as may easily be understood, both as to its nature, and when a violation occurs.

■ 1. Defendant (as we have designated him) does not claim that the purpose of the ordinance is illegal or invalid; it is, as declared, "to detect, treat and prevent lead poisoning resulting from the internal consumption * * * of lead-bearing sub-

stances * * *." Defendant says, first, that the means adopted are not adequately related to the purpose, because the ordinance does not require a finding of conditions that would reasonably result in the consumption of lead and, further, does not require that the premises be occupied by children. We may dispose of the latter element very readily. In housing of the type where lead poisoning is a hazard, the tenants move and shift around rapidly; if there are no children occupying the premises today, they may be there next week; also, children visit relatives, stay with baby-sitters, etc., and thus are frequently present in premises where they are not among the regular tenants. A specific requirement of the presence of children was not necessary. Defendant further argues that there can be no reasonable relationship between the mere presence of lead paint and the internal consumption thereof, unless the paint is peeling or chipping; this, because the principal danger is to children and they will not usually eat the paint unless it has chipped or peeled. There are adequate answers to this: first, the evidence shows without contradiction that children often *chew* painted window-sills, railings, etc., which are low enough for them to reach; and secondly, if paint is not peeling or chipping today or this week, it may be doing so next week or next month and there cannot reasonably be constant inspections. The ordinance was not rendered arbitrary or unreasonable (or unconstitutional) by the omission of any required findings on these two elements.

 Defendant has cited: McDonnell Aircraft Corp. v. City of Berkeley, 367 S. W.2d 498 (Mo.1963), State ex rel. Doorack et al. v. Lewis, 439 S.W.2d 541 (Mo.App. 1969), and 16 Am.Jur.2d, Constitutional Law, § 279, p. 541. The cases have no application here on their facts; the only possible application is the statement of the rule that an ordinance, adopted pursuant to the police power, must not be unreasonable or arbitrary, and that it must bear a reasonable relation to a legitimate end. These principles are well recognized. The McDonnell case involved an annexation, and the Doorack case a vandalism ordinance. The Am.Jur. citation merely states that the means adopted must be reasonably necessary and appropriate for the accomplishment of the stated purpose. We hold here that it is. Considering all the evidence in the light most favorable to the City, since the findings and conclusions are in its favor, State v. Lee, 492 S.W.2d 28 (Mo. App.1973); State v. Petrechko, 486 S.W.2d 217 (Mo.1972), defendant has not established its first point. If we consider this as a civil case, the same result is reached for we give deference to the findings of the trial judge on any conflicting evidence (Rule 73.01, V.A.M.R.). On the evidence the ordinance, as written, did and does bear a reasonable relationship to its stated object. The courts usually regard with favor statutes and ordinances enacted under the police power and relating to public health, safety or welfare, even where they restrict the use of private property. Deimeke v. State Highway Comm., 444 S.W. 2d 480 (Mo.1969); Passler v. Johnson, 304 S.W.2d 903 (Mo.1957); McDonnell, supra; Queenside Hills Realty Co., Inc. v. Saxl, 328 U.S. 80, 66 S.Ct. 850, 90 L.Ed. 1096 (1946); City of St. Louis v. Nash, 260 S. W. 985 (Mo.1924). And see City of St. Louis v. Brune, 515 S.W.2d 471 (Mo. banc 1974), where the principle is rather fully stated. The facts of this case distinguish it from that case, which involved this same defendant. The expense involved here is obviously not nearly so substantial as in that case (where it bordered on the confiscatory level), and the immediate hazard to the public here is much more real and imminent.

█ 2. It is also argued that the ordinance unlawfully delegates to the Health Commissioner the legislative power to establish standards, by failing to make the requirements contended for in the previous point. We have already held that the presence of lead paint in housing units is sufficient to bear a reasonable relationship to

the public health; and the ordinance declares this to be an offense. The Health Commissioner was not authorized to decide what constitutes the offense, but to inspect, locate the offending paint, take samples, require correction in the offending premises and, if necessary, to initiate prosecution. The power to determine what was a violation was not left to him; he merely found the facts. If his inspectors chose, as a practical matter, to take samples only of peeling or chipping paint, as they seemingly did, that is nothing which defendant can complain of. They acted within the scope of the ordinance. Defendant's paint was chipping and peeling, and there is some doubt as to whether he even has the standing to raise this point. The only delegation actually made to the Health Commissioner was the power to determine the manner in which offending, exposed surfaces should be treated under the general provision that they should be "removed or securely and permanently covered." This was a mere matter of administrative detail, which, under all the authorities, may be delegated. The city council could not legislate as to every wall, windowsill and door, as they existed under differing conditions and circumstances. Indeed, the method of treatment and correction is a matter which is not raised anywhere in the briefs. There was no unlawful or unconstitutional delegation of legislative power. The cited case of Cavanaugh v. Gerk, 313 Mo. 375, 280 S.W. 51 (1926) is in nowise applicable except in its statement of general principles. It has repeatedly been held that in the enactment of police regulations for the protection of the public health and safety, where some flexibility is needed in the accomplishment of the legislative purpose, a discretion may be delegated to the administrative officials to make rules and regulations for enforcement, so long as they bear a reasonable relation to the legislative purpose, to find facts, and to make decisions accordingly. Milgram Food Stores, Inc. v. Ketchum, 384 S.W.2d 510 (Mo.1964); State ex rel. Priest et al. v. Gunn et al., 326 S.W.2d 314 (Mo. banc

1959); State v. Cushman, 451 S.W.2d 17 (Mo.1970); Ketring v. Sturges et al., 372 S.W.2d 104 (Mo.1963); Milani v. Miller et al., 515 S.W.2d 412 (Mo.1974); ABC Security Service v. Miller et al., 514 S.W.2d 521 (Mo.1974); McCallister v. Priest et al., 422 S.W.2d 650 (Mo. banc 1968). As the cases say, this has become a necessity of modern legislation, and the principle is particularly applicable in legislation involving public health and welfare. There was no unlawful or unconstitutional delegation of legislative power here.

The only case cited under any point which involved legislation on lead poisoning is City-Wide Coalition, etc. v. Philadelphia Housing Authority et al. (E.D.Pa.), 356 F.Supp. 123 (1973). It decided nothing which is really applicable here. The Court held that the Department of Housing and Urban Development, in its repair, reconstruction and sale of sub-standard housing, could not ignore the lead-poisoning ordinance of the City of Philadelphia (which contained strict provisions) because of its own more lax regulations. The City Ordinance required the removal of lead paint from all surfaces accessible to children; its validity was not in issue. The Court noted the chewing proclivity of children and made a finding that the City Ordinance was reasonable.

■■ The last point made by defendant is that the ordinance is so vague that one cannot know "the nature of the offense charged and when the violation" occurs. A careful reading of the ordinance refutes this claim. Essentially, the ordinance makes it unlawful not to remove lead paint (as defined) within 14 days after due and specific notice is given. The case cited, Diemer v. Weiss, 343 Mo. 626, 122 S.W.2d 922 (1938), merely states the well-recognized principle that statutes and ordinances fixing crimes and quasi crimes should be so worded that one may know whether he is violating the law. But the Court further held, in recognition of an equally well-established principle, that if the law is susceptible of any reasonable and practical

construction which will support it, it will be held valid, and that the courts must endeavor, by every rule of construction, to give it effect. To the same general effect see State ex rel. Doorack et al. v. Lewis, 439 S.W.2d 541 (Mo.App.1969), also cited by defendant; McCallister v. Priest et al., 422 S.W.2d 650 (Mo. banc 1968); Milani v. Miller et al., 515 S.W.2d 412 (Mo.1974) and cases discussed therein; City of St. Louis v. Eskridge, 486 S.W.2d 648 (Mo. App.1972). Defendant complains of supposed variations in wording between different sections as: "No person shall use or apply * * * manufacture, sell * * * manufacture * * *" (Sections 5, 6, 7) lead-bearing substances, whereas Section 11 merely states that lead-bearing substances upon exposed surfaces shall be removed or securely and permanently covered. Such variation is of no consequence to defendant, and the contention is really frivolous; he did not apply, sell, or manufacture; he seems to complain that Section 11 does not prohibit the "use" in dwellings; Section 11 does effectively condemn the continued *presence* of such paint in dwelling units. He further complains that Section 11 is conditional, i. e., it is effective only after inspection is made, samples are taken, analyzed and determined to contain 1% lead, notice given and corrections not made. He says that this leaves an uncertainty as to *what* the offense is and *when* it is committed. We do not so interpret the ordinance. Read reasonably, it merely says that one owning or managing a dwelling unit where there is lead paint (over 1%) on exposed surfaces, is *not* to be held in violation until the above steps are taken to locate and isolate it, and until 14 days after he is notified, thus giving him opportunity to correct the situation. If he fails, he is then guilty. The offense is in *permitting the offending paint to remain "untreated,"* and it occurs at the expiration of 14 days after notice. There is no uncertainty about this, and the defendant did not comply for five months. This procedure does not require an owner to speculate on whether or not he has lead paint on ex-posed surfaces. The ordinance is fully understandable and, in addition, it gives the owner a "break," by not requiring him to take samples and make tests. Anyone can understand this ordinance who really wants to do so.

Having considered all of defendant's points, we find no reversible error, and the judgment is affirmed.

PER CURIAM:

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.