L. A. DeFRATIES, d/b/a Dairy Queen, Inc., et al., Respondents,

v.

KANSAS CITY, a Missouri Municipality, Appellant.

No. 58623.

Supreme Court of Missouri, Division No. 1.

March 10, 1975.

Motion for Rehearing and to Transfer to Supreme Court en Banc Denied April 14, 1975.

Heavner, Jarrett & Kimball, Donald G. Kimball, Kansas City, for respondents.

Aaron A. Wilson, City Atty., Ned B. Bahr, Walter J. O'Toole, Jr., Assist. City Attys., Kansas City, for appellant.

LAURANCE M. HYDE, Special Commissioner.

Declaratory judgment action to determine the validity of an ordinance of Kansas City and § 355 of Art. X of the city charter claimed to be in violation of § 10, Art. I and § 19, Art. VI of the Constitution of Missouri, V.A.M.S., and the 14th Amendment of the Constitution of the United States and inconsistent with § 88.-917, RSMo 1969, V.A.M.S. The trial court declared the whole proceedings void, finding § 355 of Art. X of the charter to be a denial of due process of law in violation of the United States Constitution and the Constitution of Missouri. The City has appealed and we affirm the judgment declaring void the special assessments for cost of change of grade made against the property of plaintiffs.

Plaintiffs are property owners on Hardesty Avenue which was a dead-end residential street between Blue Parkway (U.S. Highway 50) and 57th Street. As hereinafter noted Kansas City started proceedings on the same basis as required for changing the grade of any street. See Art. VII, §§ 225–226 as to remonstrances. Kansas City by ordinance on November 9, 1966 designated Hardesty to become part of the trafficway system of the city. Later the city changed the name of the street to Manchester Trafficway from Highway 50 to 63rd Street. In August 1967 a change of the grade of Hardesty was provided for to 57th Street, where Hardesty ended. The Trafficway was to be widened to four lanes. The city again by an ordinance adopted September 29, 1967 provided for the change of name of Hardesty Avenue to Manchester Trafficway, placing it in the trafficway system of the city. This ordinance also established the change of grade

and this was approved by a court decree of October 24, 1968.

Article X, § 353 of the Kansas City Charter established a trafficways commission to study the needs for "arteries of general traffic through the city, adapted to the safe, convenient and facile transportation of vehicles other than those for passengers only, in larger volume and in heavier service than may be required in serving the average traffic needs of the property abutting thereon."

Section 355 thereof provides: "No petition or remonstrance by property owners shall affect or limit the power and right of the council or of the trafficways commission, granted herein or by any ordinance authorized hereunder, to authorize any improvement of any such trafficway, or to establish or reestablish the grade thereof."

Section 357 thereof provided the cost of trafficways to be paid out of funds of the city or out of the proceeds from the sale of bonds "or by special assessment upon real estate."

The effect of a remonstrance is to terminate the power of the city council to make the change of grade until a sufficient number of owners remonstrating withdraw so that the remonstrance ceases to represent a majority of resident owners or until the changes are approved by a majority of the qualified voters of the city at a general or special election. § 226, Art. VII of the Charter.

Following the procedure for making a change of grade, provided by Article VII of the Charter, a notice of change of grade was published by the city stating that property owners could file a remonstrance on or before September 11, 1967. However the correct date provided by Art. VII, § 225 and § 88.917, RSMo, on which plaintiffs also rely, was September 16, 1967. Furthermore, a hearing was held on September 6, 1967, and the city engineer in answer to a property owner's question stated: "The city charter provides there is no re-

monstrance against grading." He also said: "It would be impossible for the city to charge you when paving if the owners of 50% of the abutting property owners are opposed." The property owners later did file a remonstrance but not until December 13, 1968. The ordinance granting the contract for grading and construction of the trafficway was adopted March 13, 1970. This action was filed May 5, 1971.

The court found § 88.917 applied to all Missouri cities which have a population of over 300,000 and that Kansas City is one of those cities. However, the court further found that the provision of Article X of the city charter (§ 355 thereof) taking away the right to file a remonstrance for change of grade is a denial of due process of law in violation of the United States Constitution and the Constitution of Missouri. Our view is that the situation in this case shows no benefit to the resident homeowners on Hardesty but instead shows a detriment.

Defendant claims substantial compliance with notice provisions, citing Owens v. City of Marion, 127 Iowa 469, 103 N.W. 381 (1905), where two notices, to give the plaintiff therein 20 days to file objections, were published late so that one would have left 19 days and the other 18 days from the time of the publication. The court held: "The notice was defective only, and not void" saying, "As the statute fixes the time within which objections may be filed as 20 days after the first publication is completed * * * the defect in the notice in fixing another time * * * did not * * * prejudice plaintiff's right to file her objections within the time given her by statute. The notice was defective only, and not void."

However, the notice in this case not only specifically stated the date for remonstrance (which was incorrect by five days) but then the city held a meeting September 6, 1967 (even before the incorrectly stated date) at which the property owners were told by the city engineer presiding that

"there is no remonstrance against grading." Although the ordinance making Hardesty a trafficway had been adopted November 9, 1966, its ordinance changing the grade was adopted September 29, 1967. The purpose of its notice and the September 6, 1967 meeting is not apparent since the city's contention has been that there could be no remonstrance against a trafficway.

Furthermore, there is support for the trial court's view that establishing this trafficway could not confer a benefit on property on such a residential street. In 70 Am.Jur.2d, Special or Local Assessments § 35, p. 873, it is said: "[T]he creation of a four-lane highway or through street to accommodate heavy traffic, by widening a rural road or a street in a fine residential district * * * have been held not to confer any benefit on adjacent property sufficient to justify a special assessment thereon, since such widening was a detriment, rather than a benefit, to the abutting property owners." See also Brill v. City of Grand Rapids, 383 Mich. 216, 174 N.W.2d 832, 46 A.L.R.3d 121 (1970), and annotation 46 A.L.R.3d 127, citing earlier Michigan cases cited in plaintiffs' brief, namely: Fluckey v. Plymouth, 358 Mich. 447, 100 N.W.2d 486 (1960); Knott v. Flint, 363 Mich. 483, 109 N.W.2d 908 (1961). There is nothing in the record in this case to show that changing this dead-end residential street to a wider trafficway with a higher street grade, bringing greatly increased traffic of larger, heavier vehicles, could constitute a benefit for which these residential property owners should be required to pay.

As hereinabove noted, § 353 of Article X of the city charter states the purpose of trafficways to be "arteries of general traffic through the city, adapted to the safe, convenient and facile transportation of vehicles other than those for passengers only, in larger volume and in heavier service than may be required in serving the average traffic needs of the property abutting thereon." The trafficway herein in-

volved began at Highway 50 and goes into another trafficway. It certainly appears to have been intended for such traffic into and out of the city as well as similar traffic within the city.

In Brill, supra, 383 Mich. l.c. 220, 174 N.W.2d l.c. 834, 46 A.L.R.3d l.c. 124–125, the Michigan Supreme Court said (where a residential street with pavement 20 feet wide was paved to a width of 44 feet connecting a Belt Line highway with the inner city): "In general, the project has made of the street a less safe place to live,- both for children and adults, and has made motoring entry and departure, to and from one's residential driveway, a hazard that did not exist before * * *." The fact is, and this we judicially notice, that there can be some risk of damage or injury involved when one attempts to back out of his private driveway into a typically trafficked four-lane highway * * *. "That fact tends understandably to depress the pleasure of home life in such an area and, hence, the value of that one's home." It was also stated: "To say that all this does not amount to proof of no benefit is to deny reality."

In this case, the street was to be widened to four lanes with no sidewalks and the street with a higher grade brought closer to the houses, with sloping sides of cut backs for widening with the purpose of greatly increasing traffic. We agree with the trial court's finding that requiring these property owners to pay for increasing the grade under these circumstances cannot be sustained and would amount to taking property without due process. Therefore, it is not necessary to consider the applicability of § 88.917 to the situation in this case. We hold that the assessments against plaintiffs' property for cost of change of grade are invalid. We affirm the judgment preventing and restraining the city from assessing and levying a special assessment against the property owned by plaintiffs for this purpose.

PER CURIAM:

The foregoing opinion by LAURANCE M. HYDE, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.

## ON MOTION FOR REHEARING AND APPLICATION TO TRANSFER TO THE SUPREME COURT EN BANC

PER CURIAM:

Although the trial court as did plaintiffs relied on § 88.917, it also found plaintiffs were denied due process of law. Plaintiffs' petition did plead "depriving them of their property without due process of law in violation of the 14th amendment of the United States Constitution and Article 1 of Section 10 of the Constitution of Missouri."

The United States Supreme Court has said as to the issue of whether property is taken without due process of law: "The simple but controlling question is whether the state has given anything for which it can ask return." State of Wisconsin v. J. C. Penney Co., 311 U.S. 435, 444, 61 S.Ct. 246, 250, 85 L.Ed. 267 (1940). See also Morton Salt Co. v. City of South Hutchinson, 159 F.2d 897 (10th Cir. 1947); Cleveland-Cliffs Iron Co. v. State of Michigan, 329 Mich. 225, 45 N.W.2d 46, 55 (1950); 16A C.J.S. Constitutional Law § 648, p. 949. We have found that test governs the situation in this case because it appears that the construction of the trafficway involved could only be a detriment and not a benefit to the homeowners on this street. Although property owners who have not made a claim for damages for change of grade may not now do so, we hold that they are not to be required to pay assessments for building this trafficway because they received no benefits from it since it is a detriment to their property for the reasons stated in our opinion.

The motion for rehearing is overruled.