**LAKEWOOD PARK CEMETERY ASSOCI-ATION, Plaintiff-Appellant,**

**v.**

**METROPOLITAN ST. LOUIS SEWER DISTRICT et al., Defendants,**

The Metropolitan St. Louis Sewer District and Bank of St. Louis, Defendants-Respondents.

No. 57666.

Supreme Court of Missouri, En Banc.

Nov. 10, 1975.

Rehearing Denied Dec. 8, 1975.

Eugene V. Krell, St. Louis, for appellant.

Thompson & Mitchell, Donald J. Stohr, George C. Hays, St. Louis, for defendant Metropolitan St. Louis Sewer District-respondent.

Lowenhaupt, Chasnoff, Freeman & Holland, Richard D. Fitzgibbon, Jr., Harry L. Bell, St. Louis, for Bank of St. Louis, defendant-respondent.

BARDGETT, Presiding Judge.

Plaintiff appeals from a judgment dismissing its two-count petition for injunctive relief and declaratory judgment and from a judgment in favor of defendant-respondent Bank of St. Louis on its counterclaim. The effect of the judgments is that certain special benefit tax bills issued by the Metropolitan St. Louis Sewer District against plaintiff as one of the landowners within Special Benefit Subdistrict No. 42 (Lakewood Area) for the construction of certain lateral sanitary sewers and which were assigned by Crow Contracting Company, the construction company, to defendant Bank of St. Louis were held to be valid.

The alleged basis for Supreme Court jurisdiction of this direct appeal is, at best, tenuous; however, the court has decided to entertain jurisdiction on the basis that one of plaintiff's contentions is that it is not subject to special benefit tax assessments because it is a nonprofit cemetery and exempt from real property taxation under Art. X, sec. 6, Mo.Const.1945, V.A.M.S. and sec. 137.100, RSMo 1969, V.A.M.S. The fact that this litigation dates back to 1959, was once on appeal to the St. Louis Court of Appeals in 1965 and transferred here for lack of jurisdiction in that court under Art. V, sec. 3, Mo.Const.1945, prior to the amendments effective January 1, 1972, Lakewood Pk. C. Assn. v. Metropolitan St. Louis Sewer Dist., 396 S.W.2d 744 (Mo.App.1965), after which the appeal was dismissed as premature by this court in 1966, after which the counterclaim was finally tried in 1971 and appealed just five days after the effective date of our new jurisdiction under Art. V, Mo.Const.1945, as amended, has played a significant part in our decision to retain and decide this case. We do so under authority of Mo. Const., Art. V, Sec. 10. Foremost-McKesson v. Davis, 488 S.W.2d 193, 196 (Mo.1972); Ginnings v. State, 506 S.W.2d 422, 423 (Mo.1974).

Lakewood Park Cemetery Association, plaintiff-appellant, is, admittedly, a nonprofit cemetery located in the south part of St. Louis County and is within the territory which comprises the Metropolitan St. Louis Sewer District, hereafter Sewer District. On September 2, 1958, the board of trustees of the Sewer District adopted ordinance No. 228 confirming a contract between that district and Crow Contracting Co. for the construction of certain lateral sanitary sewers in an area designated Special Benefit Subdistrict No. 42 known as Lakewood Subdistrict and hereafter referred to as such. Crow undertook the construction of the sewers which construction was accepted and approved by the Sewer District.

On October 22, 1959, the Sewer District passed ordinance 336 which levied special benefit assessments against land within the Lakewood Subdistrict. Appellant's cemetery lies, in part, within the Lakewood Subdistrict. The special tax bills were duly recorded and delivered to Crow Contracting Co. which assigned them to the Bank of St. Louis.

On November 24, 1959, appellant filed this suit against the Sewer District, Crow Contracting Co., and Bank of St. Louis, seeking a decree holding the special tax bills issued by the district invalid as to appellant's land. Appellant's original and first amended petition are not in the record on appeal. Defendant Bank filed an answer to plaintiff-appellant's first amended petition and the other two defendants filed motions to dismiss plaintiff's petition. On March 18, 1961, plaintiff, by leave, filed its second amended petition in two counts in which Crow was dropped as a defendant. Count 1 sought an injunction restraining the Sewer District from enforcing ordinance 336; restraining the Bank from enforcing the special tax bills against plaintiff's property; and for an order cancelling the special tax bills. Count 2 prayed for a decree that plaintiff's property was not subject to special assessment

for construction of sewer improvements. The Bank and the Sewer District filed motions to dismiss both counts of plaintiff's second amended petition on the ground that it failed to state a claim upon which relief could be granted. Bank of St. Louis filed a counterclaim alleging the special tax bills directed to the property of plaintiff were validly issued and seeking a declaration that said bills to be a valid enforceable lien upon plaintiff's property.

At this point it is noted that the issue presented by both plaintiff's petition and the Bank's counterclaim is essentially the same—the validity or invalidity of the special tax bills.

A year later on November 20, 1962, plaintiff filed a third amended petition against the Sewer District and the Bank. The third amended petition recites that it is filed by leave of court; however, it is questionable as to whether or not the court formally granted leave to file it. In any event, the Sewer District noticed plaintiff that the Sewer District's motion to dismiss filed March 31, 1961, would be heard January 11, 1963, at which time the Sewer District would seek an order dismissing plaintiff's cause of action with prejudice. Plaintiff filed a motion to strike the Bank's and Sewer District's motions to dismiss plaintiff's second amended petition on the grounds that plaintiff had, by leave of court, filed a third amended petition and the previous motions to dismiss were therefore moot.

Plaintiff also filed a motion to strike or dismiss the Bank's counterclaim on the grounds that the Bank had failed to file an answer to plaintiff's second amended petition and that the counterclaim failed to state a claim upon which relief could be granted. The Bank then filed a motion to strike plaintiff's third amended petition alleging several procedural grounds.

On June 1, 1964, the trial court entered the following order:

"FINAL JUDGMENT OF DISMISSAL

"(Caption omitted.)

"This cause, on due notice, came on for hearing on the motion of defendant, The Metropolitan St. Louis Sewer District, for a final judgment of dismissal of the plaintiff's cause of action with prejudice for failure of the plaintiff to amend its petition within the time allowed therefor in the order dismissing the plaintiff's amended petition, as extended by leave of Court.

"The hearing having been held, and the Court being fully advised in the premises, finds that the plaintiff failed to amend its petition in any material respect by the time permitted in the court's order of dismissal of the plaintiff's Amended Petition, as extended by leave of court, and that the plaintiff's failure to amend its petition is not due to excusable neglect.

"It is, therefore, adjudged that the plaintiff's cause of action is finally dismissed.

"Motion of Defendant Bank of St. Louis to strike plaintiff's Third Amended Petition sustained."

Plaintiff moved the court to set aside its judgment of dismissal and to rehear the matter, or alternatively to dismiss the Bank's counterclaim, which motion was overruled on September 11, 1964, and plaintiff took an appeal to the then St. Louis Court of Appeals in September 1964. As noted supra the court of appeals transferred the appeal to this court, and thereafter this court dismissed the appeal as premature.

After remand to the circuit court, the plaintiff filed its answer to the counterclaim of the Bank by which, inter alia, the validity of the special tax bills was denied.

Trial on the counterclaim began April 29, 1970. One witness testified and the parties were given time to file briefs. On September 3, 1970, the court found that ordinance 336 was legally and validly adopted by the Sewer District trustees; that the tax bill directed to plaintiff's property was

delivered to Crow Contracting Co. and thereafter assigned and transferred to the Bank, and concluded that the special tax bill directed to plaintiff's property was validly issued, constitutional, and constituted a lien on plaintiff's property. The decree of the court was: "THEREFORE it is hereby ordered, adjudged and decreed that the Special Tax bill owned by Defendant Bank of St. Louis constitutes a valid, enforceable lien upon the property of the Plaintiff. Costs against the plaintiff."

Plaintiff moved the court to set aside its findings of fact, conclusions of law and decree entered September 3, 1970, and for a rehearing. It appears from the motion that plaintiff's position, inter alia, was that it did not receive adequate notice of the trial so as to prepare to litigate all of the issues with respect to the validity or invalidity of the special tax bills and the liability, if any, of plaintiff, a not-for-profit cemetery, therefor. On December 10, 1970, the trial court sustained plaintiff's motion for rehearing, set aside its findings and decree of September 3, 1970, and reset the cause for the taking of additional testimony and evidence.

At the rehearing Pauline Schulze testified for plaintiff. Mrs. Schulze had been the bookkeeper and secretary for Lakewood Park Cemetery for 28 years and became superintendent of the cemetery on December 19, 1970, when her husband died. Her husband, Wilbur Schulze, had been superintendent of the cemetery for about 28 years and they resided in a home on the cemetery property which was not within the subdistrict territory. In summary, she testified that her husband had been the cemetery superintendent for 28 years and had been an officer of the board of trustees or directors since sometime after 1959. Their home, which also contained the cemetery office, was on the cemetery property. Mrs. Schulze had been employed as a bookkeeper-secretary for Lakewood Cemetery for 28 years in this capacity. To her knowledge the first time the cemetery board was informed that there was a pro-

posal to set up a Lakewood Subdistrict was when the board received the special tax bill by mail in 1959. She stated there was no notice given to the cemetery nor to other homeowners in the neighborhood of the proposed sewer construction. During the time Mr. Schulze was secretary of the board, Mrs. Schulze attended board meetings and typed the minutes of those meetings.

Plaintiff placed in evidence the minutes of the March 10, 1958, meeting of the Metropolitan Sewer District Board of Trustees and other exhibits. The minutes of the March 10, 1958, meeting show that the board received a report dated March 5, 1958, in reference to subdistrict No. 42 (Lakewood) which stated that a public hearing was held for subdistrict 42 on March 4, 1958, at Heege elementary school; that about 175 people were present; and at the close of the hearing a show of hands was requested and that almost all of the people favored the subdistrict and only 13 people were opposed to it. Notification of the hearing was accomplished by hand-delivering the notice to each resident of the district. The name and address of each resident was acquired and a letter of reminder was sent to each name and address of owners and residents. There were about 333 homes in the subdistrict and approximately 540 recorded plats of property.

A resolution was presented and read and adopted whereby the board found and declared it to be in the public interest that the proposed sanitary sewer improvement be made and directed that the project proceed. Trustee Gragg said he did not believe the district went far enough in its procedure in notifying property owners and residents and suggested that nothing be left undone to see that, if at all possible, all property owners who were to be taxed be fully aware of the cost of construction. The board unanimously adopted the resolution ordering the project to proceed after which trustee Gragg stated he voted aye after assurance by the executive director that his suggestion would be followed.

Respondents introduced into evidence a document entitled, "Notice of Public Hearing", which reflects that, in addition to the notice shown in the board's minutes of March 10, 1958, there had been posted on utility poles located in ten places within the proposed subdistrict a notice of hearing at the Heege school.

■ Almost all of plaintiff's points on its first effort to appeal the dismissal of its petition relate to pleading procedures that took place prior to the trial of the counterclaim of the Bank. As noted supra, the claim and the counterclaim presented the same issue which was whether the special tax bills were valid and enforceable as to plaintiff's property. On the trial of the counterclaim, plaintiff was not restricted in any way in the admission of evidence and plaintiff did undertake to defend against the counterclaim by raising and arguing all of the reasons set forth in its petition as to why the special tax bills were invalid as to plaintiff. Thus it clearly appears that plaintiff had available a full trial on all of its contentions on the singular ultimate issue presented by its petition and defendant's counterclaim. The court therefore holds that in these particulars, and in a sense peculiar circumstances, no purpose would be served by considering and deciding procedural matters which occurred prior to the trial as they would not affect the ultimate decision on the merits of this appeal. Those issues were, in effect, mooted by the trial of the cause because it was the trial of the counterclaim that, as it turned out, provided plaintiff with the opportunity to litigate all of its contentions.

Plaintiff contends that because it is a non-profit cemetery it is exempt from special benefit tax assessments under Art. X, sec. 6, Mo.Const.1945, and therefore the special tax bill issued against plaintiff's property is unconstitutional.

Art. X, sec. 6, Mo.Const.1945, exempts, inter alia, non-profit cemeteries from taxation. The parties agree and from the record it appears that plaintiff is a non-profit cemetery. Plaintiff principally relies upon Troost Ave. Cemetery Co. v. Kansas City, 348 Mo. 561, 154 S.W.2d 90, 95 (banc 1941), extracting from that opinion the following: ". . . we think the law is well established in this and other states that cemeteries *operated for profit*, and parts thereof, are subject to special benefit assessments, and that the assessments should be levied against the land as a whole, subject to the rights of grave lot owners, rather than solely against scattered spaces not occupied by graves and necessary appurtenances. (Emphasis added.)"

■ Plaintiff argues that since the cemetery is *not* operated *for* a *profit* the inverse rule of law is applicable—that a non-profit cemetery is not subject to special benefit assessment tax bills. The Troost Ave. Cemetery Co. was operated for profit, but the inference plaintiff seeks to derive from the quote from the Troost case is incorrect.

In Mullins v. Mt. St. Mary's Cemetery Ass'n, 239 Mo. 681, 144 S.W. 109, 110 (1911), the court held that the provision of the Missouri Constitution exempting non-profit cemeteries from taxation applies to general taxes levied and collected for the support and maintenance of the state and not to special assessments to pay the cost of local improvements. Mullins v. Mt. St. Mary's Cemetery Ass'n was cited with approval in the *Troost* and is the law in this state.

■ Sec. 3.020(21) of the Plan of the Metropolitan St. Louis Sewer District empowers it "[t]o fix, levy, and collect special benefit assessments for the construction, improvement, or extension of sewer or drainage facilities, levied ratably by area upon such lots or parcels of ground within the District, whether *public* or *private,* . . ." (Emphasis added.) This provision is not contrary to Art. X, sec. 6, Mo.Const.1945.

The trustees of the Metropolitan St. Louis Sewer District acted pursuant to the power granted by sec. 3.020(21) of the

plan. Sec. 3.020(21) does not violate Art. X, sec. 6, Mo.Const.1945, in authorizing special benefit assessments as to non-profit cemeteries. The point is overruled.

Plaintiff contends that the assessment of benefits under the area rule against the whole 108 acres of its property within the subdistrict for sanitary sewer construction was arbitrary and capricious in that the board of trustees failed to take into consideration the use to which the property was being used contrary to Art. 7, sec. 7.200 of the plan. The special benefit assessments were made at the rate of .06911802 cents per square foot of all property within the subdistrict.

■ If this contention is directed to the decision to include cemetery property within the subdistrict, then the answer is that that decision was a matter of legislative discretion and the authority to make it is vested in the Board of Trustees of the Metropolitan Sewer District and in the absence of fraud or unless a real and arbitrary abuse of discretion clearly appears is conclusive on the courts. Heman v. Schulte, 166 Mo. 409, 66 S.W. 163, 166 (1901); City of Webster Groves v. Taylor, 321 Mo. 955, 13 S.W.2d 646, 647 (1928); Reis v. Metro. St. Louis Sewer Dist., 373 S.W.2d 22, 29 (Mo.1963).

There is no evidence of fraud nor of an arbitrary abuse of discretion in this case.

■ It may be that plaintiff's contention that the board of trustees violated Art. 7, sec. 7.200 of the plan, is directed to the rate per square foot applied to plaintiff's property. The rate was uniformly applied to all property within the subdistrict. There is no evidence that the board of trustees failed to consider the use to which the property was being put when it made its assessment on the property within the subdistrict. The point is overruled.

■ Plaintiff contends that ordinance 336 was invalid because there was no evidence that the suggestion of trustee Gragg, noted supra, was followed with reference to notice of the cost of construction. The minutes reflect that ordinance 336 was unanimously adopted by the board of trustees. This was a legislative act on the part of the board and its validity cannot be made dependent upon the satisfaction of certain reservations in the mind of a member of the board. The point is overruled.

Plaintiff contends the Sewer District should not have applied the area rule to the entire property of plaintiff within the subdistrict citing State ex rel. State Highway Commission v. Barbeau, 397 S.W.2d 561 (Mo.1965). However, that was a condemnation case and involved the valuation of cemetery land taken by the State Highway Commission and was not concerned with special benefit assessments where the cost of a project is apportioned among the property owners on a per-square-foot basis.

The decree of the trial court was that the special tax bill owned by respondent Bank was validly issued, constitutional and proper, and constituted a lien upon the property of plaintiff. This case does not concern the enforcement of the lien nor an attempt to sell the property to satisfy the lien, nor the application of special rules with respect to the sale of cemetery property to satisfy a lien. See Troost Ave. Cemetery Co. v. Kansas City, *supra*, loc. cit. 100–101 of 154 S.W.2d.

The judgment is affirmed.

All of the Judges concur.

PER CURIAM.

This appeal was transferred to the court en banc after the divisional opinion was handed down in order to consider the effect, if any, of the recent case of *DeFraties v. Kansas City*, 521 S.W.2d 385 (Mo.1975), on the instant matter. By this per curiam opinion we now adopt the foregoing divisional opinion by Bardgett, J.

In *DeFraties* the court held that a special benefit assessment for the cost of change in grade of a street could not be made against the adjoining homeowners be-

cause the change did not benefit the adjoining property but, to the contrary, *constituted a detriment to that property.* There, Kansas City converted Hardesty Avenue, a dead-end residential street into a four-lane through trafficway, with no sidewalks, and designed to carry greatly increased traffic of larger and heavier vehicles between highway 50 and another trafficway. The record in *DeFraties* demonstrated the detriment and on that basis this court affirmed the trial court's judgment restraining the city from levying special benefit assessments for the change in grade costs against the plaintiffs' adjoining properties.

In the instant case, no one has even suggested that the installation of sanitary sewers in the subdistrict constituted a detriment to the use of appellant's property as a cemetery nor that the sanitary sewers adversely affected the value of appellant's land as such. It would appear that such a proposition would be untenable on its face.

■■■ And, if the question is whether channeling raw sewage in enclosed conduits *to a disposal point, as opposed to permitting* raw sewage to meander through open land and seep into adjoining ground, confers a benefit upon the abutting property, the answer would certainly appear to be that the property is benefited by the sanitary sewer. This is so even though the property owner does not directly use the sewer himself. It is not essential that the benefits be direct or immediate to justify an assessment to particular lands, but it is essential that they have a better basis than mere speculation or conjecture. *Kansas City R. Co. v. Road Improvement Dist.*, 266 U.S. 379, 45 S.Ct. 136, 69 L.Ed. 335 (1924).

It appears that appellant approaches the question of "benefits" to the property from the standpoint that only when the use to which the property is put involves generating raw sewage which would be disposed of by a sanitary sewer does a benefit to the property accrue. Thus, if the use of the property produces raw sewage, then the disposal of the sewage benefits the proper-

ty, and if no sewage is produced then no benefit is conferred and ergo, the land is not subject to a special tax bill. This approach is fundamentally wrong.

Sanitary sewers exist basically for the protection of the health of the people. One of the consequences of their installation is the enhancement of property values which simply results from the removal of filth which is known to be a cause of disease. The Metropolitan St. Louis Sewer District was established "[i]n the interest of the public health . . . ." Sec. 1.010 of the plan.

*Whitsett v. City of Carthage*, 270 Mo. 269, 193 S.W. 21 (1917), involved a suit to enjoin construction of a sewer on the grounds that the ordinance authorizing its construction was unreasonable, unjust and oppressive, in that the plaintiffs' lands, used for agricultural and gardening purposes, would have to bear a large portion of the cost of construction and would not be correspondingly benefited. In upholding the denial of the injunction, this court stated at 24–25:

"Every person in this state and country holds his property subject to the laws providing for the public health, safety, morals, and general welfare, and, if taken or damaged for any one or more of those purposes, then he is entitled to just compensation therefor; likewise, his property must bear its just portion of the cost and expense securing that protection. . . . The public health is menaced and endangered by the aggregation of filth and refuse of the entire district, and is not limited to accumulations thereof upon or about each separate lot or tract of ground located therein. . . .

"Counsel for plaintiffs seem to think that the benefits to real estate only can be considered in the construction of sewers. While in a technical sense that may be true, in a practical sense it is only indirectly true, *in a primary sense the benefits are conferred upon the entire people of the district, and secondarily upon the real estate, . . .* " (Emphasis added.)

The special assessment levied against appellant's property is necessary and incidental to an overall plan to promote the general health and welfare of the entire subdistrict of which appellant's land forms a part.

Although cemeteries are used to bury the dead, it is live people who perform that task and they congregate at grave sites for that purpose. They also return periodically to visit the graves of their loved ones. Appellant-cemetery is not located in some remote rural area. It is within the metropolitan St. Louis area and is adjoined by Pebble Hill subdivision, a residential development located on land that was, at an earlier time, part of the cemetery property.

■ The legislative determination by the Sewer District board of trustees of the necessity for the sanitary sewer, pursuant to sec. 9.010 of the plan, creates a presumption that the property in the subdistrict is benefited thereby, 70 Am.Jur.2d *Special or Local Assessments*, sec. 8 (1973), and the burden of establishing the contrary rests upon appellant.

In *Mullins v. Mt. St. Mary's Cemetery Ass'n*, 268 Mo. 691, 187 S.W. 1169 (1916), this court in rejecting a claim that cemetery lands were not benefited by a storm sewer, said at 1170: "There is a presumption in favor of the reasonableness of such an ordinance, and the burden of establishing the contrary rests upon the objector. *Hislop v. Joplin*, 250 Mo. 588, 157 S.W. 625; *St. Louis v. Theater Co.*, 202 Mo. 690, 100 S.W. 627. That prima facie case must be overcome 'in the most satisfactory manner.' *Morse v. City of West Port*, 110 Mo. 502, 19 S.W. 831."

■ The court holds that appellant has failed to overcome the presumption that benefits accrue to the cemetery property as a result of the sanitary sewers in question. *DeFraties* does not warrant a different result than that reached in the divisional opinion in the instant case.

■ On rehearing by the court en banc, appellant, for the first time in the fifteen years this litigation has been pending, complained of a discrepancy that appears in the special tax bill. The description of the property appearing at one place in the tax bill describes a rectangle 385 feet by 170 feet. This totals 65450 square feet. At the place on the tax bill where the tax computation appears the amount of appellant's property included within the subdistrict is shown to be 97151.72 square feet. The rate per square foot is applied to the 97151.72 square-foot figure and results in a bill of $6714.98. The lesser square footage would amount to a bill of $4523.77.

Sec. 9.060 of the plan provides in part:

". . . They [special tax bills] shall be prima facie evidence of what they contain and of their own validity, and no mere informality or clerical mistake in any of the proceedings shall be a defense thereto . . . "

Appellant instituted this litigation and at no time contested the amount of the tax bill nor the square footage of its property which was included within the subdistrict. Indeed, the appellant's petition, second-amended petition, third-amended petition, and appellant's answer to the counterclaim, alleged and admitted that 97200 square feet of appellant's property was included within the subdistrict. This is more square footage than that for which appellant was billed.

The court can only conclude that appellant, by its pleadings, conceded the discrepancy to be a clerical mistake and, therefore, did not choose to litigate the question in circuit court. The point is overruled.

The judgment is affirmed.

All concur.