Verna Mae CRAIG et al., Appellants,

v.

The CITY OF MACON, Missouri, et al., Respondents.

No. 59281.

Supreme Court of Missouri, En Banc.

Dec. 13, 1976.

Charles E. Rendlen, Jr., Douglas F. Browne, Rendlen, Rendlen & Ahrens, Hannibal, for appellants.

John C. Danforth, Atty. Gen., Dan R. Summers, Asst. Atty. Gen., Jefferson City, for respondents.

SEILER, Chief Justice.

Pursuant to § 260.215, RSMo Supp.1975, the city of Macon enacted ordinances which provide a comprehensive system for the collection and disposal of solid waste produced within the city's limits. Appellants are residents of the city who have their own means of waste disposal, and therefore, do not avail themselves of the services provided by the city's contract hauler. Appellants claim that the $2.45 per month waste disposal charge is invalid as an improperly levied tax and dispute the validity of this mandatory service charge imposed upon them for waste disposal services that they do not use. Appellants sought injunctive relief against the city, which counterclaimed for the unpaid charges. The trial court found that the disposal charge was a valid service charge, not a tax, and denied relief. Moreover, the trial court found both the ordinances and enabling legislation valid as reasonable exercises of the police power and awarded judgment to the city on its counterclaim for unpaid waste disposal charges. An appeal was taken directly to this court since this case involves construction of the revenue laws. Art. V, § 3, Mo.Const.1969. We affirm.

Appellants' primary contention is that the city's solid waste disposal charge is a tax, and as such it is invalid because it was never put before the people for approval as required by § 260.245, RSMo Supp.1975.

■ The legislature enacted §§ 260.-200–.245 to prevent public nuisances, public health hazards, and the despoliation of the environment that necessarily accompany the accumulation and unmanaged disposal of garbage, refuse, and filth. Throughout human history this menace has led to and intensified disease and plague. The legislature, in its wisdom, has forbidden the dumping of solid waste on the ground, in streams, springs, and other bodies of water except through licensed solid waste processing facilities, solid waste disposal areas, and other means that do not create public nuisances or adversely affect the public health.

Section 260.215, the provision pursuant to which the city enacted its ordinances, in part provides:

". . . each city . . . shall provide . . . for the collection and disposal of solid wastes within its boundaries; shall be responsible for implementing their approved plan . . . as it relates to the storage, collection, transportation, processing, and disposal of their solid wastes . . . . Each city . . . may levy and collect charges for the necessary cost of providing such services, and may levy an annual tax . . . for solid waste management, and . . . do all other things necessary to provide for a proper and effective solid waste management system . . . ." Section 260.245 qualifies a municipality's authority to levy a tax under § 260.215 by requiring that such an annual tax be approved by a majority of the voters in the governmental unit.

■ First, it must be noted that nothing in the statutory scheme compels the conclusion that all payments made pursuant to § 260.215 are taxes. To the contrary, the permissive language of the section authorizes either a service charge or a tax. Moreover, if only a tax were contemplated by § 260.215, the language referring to "charges" would be rendered mere surplusage.

The term "tax" has been defined variously, but the appropriate definition for us is found in *Leggett v. Missouri State Life Ins. Co.*, 342 S.W.2d 833, 875 (Mo. banc 1960) in which we stated: "Taxes are 'proportional contributions imposed by the state upon individuals for the support of government and for all public needs.' . . . Taxes are not payments for a special privilege or a special service rendered. . . . Fees or charges prescribed by law to be paid by certain individuals to public officers for services rendered in connection with a specific purpose ordinarily are not taxes . . unless the object of the requirement is to raise revenue to be paid into the general fund of the government to defray customary governmental expenditures . . . rather than compensation of public officers for particular services rendered. . . ." See also *Wilhoit v. City of Springfield*, 237 Mo.App. 775, 171 S.W.2d 95, 100–101 (1943).

■ In the case before us, the charge was only incidental to the regulatory scheme. The payments went only to pay the cost of the waste collection and disposal. The ordinances authorized only those charges necessary to pay the expenses of the service; the hauler's bid proposal, which was incorporated into the waste hauling contract, called for $2.45 per month; the city billed the appellants at the rate of $2.45 per month, and the city seeks to collect unpaid charges of $2.45 per month. None of the money subsidized the operation of the city or went into general revenue. Rather, the payments were collected for a specific purpose, to pay the cost of the service. Hence, the charge is not a tax, but a service charge. See *Mayor and Aldermen of City of Milledgeville v. Green*, 221 Ga.

498, 145 S.E.2d 507, 509 (1965); *City of Lake Charles v. Wallace*, 247 La. 285, 170 So.2d 654, 655, 660–61 (1965); *Tayloe v. City of Wahpeton*, 62 N.W.2d 31, 36–37 (N.D.1953).

Having found the waste collection and disposal fee to be a service charge, it remains to be determined whether the mandatory nature of this charge is a reasonable and valid exercise of the city's police power.

■ Generally, the function of the police power has been held to promote the health, welfare, and safety of the people by regulating all threats either to the comfort, safety, and welfare of the populace or harmful to the public interest. *City of St. Louis v. Brune*, 520 S.W.2d 12, 15 (Mo.1975) (per curiam); *Kalbfell v. City of St. Louis*, 357 Mo. 986, 211 S.W.2d 911, 916–17 (1948). More specifically, the preservation of the public health is recognized as a goal of the highest priority, *Schroeder v. City of St. Louis*, 360 Mo. 293, 228 S.W.2d 677, 678 (1950); *Edmonds v. City of St. Louis*, 348 Mo. 1063, 156 S.W.2d 619, 622 (1941), and the accumulation of garbage is a serious threat to the public health. *Valley Spring Hog Ranch Co. v. Plagmann*, 282 Mo. 1, 220 S.W. 1, 3 (banc 1920); *Campbell v. City of Frontenac*, 527 S.W.2d 643, 645 (Mo.App. 1975); *Harper v. Richardson*, 222 Mo.App. 311, 297 S.W. 141, 145 (1927). Nonetheless, appellants contend that because they do not have their garbage removed, they do not use the service for which they are billed, and therefore, the ordinances are unreasonable. Appellants, however, erroneously assume that the only benefit conferred by the statute is the removal of one's own garbage. The legislative intent and the purpose of the city's ordinances are not primarily to remove waste from the community for the convenience of residents, but rather to protect the public health by regulating the collection and disposal of garbage, and thereby minimizing or eliminating a source of disease. Although the appellants may not have waste to be collected, the regulatory scheme protects the entire public, not just those who have waste for disposal, by responsibly removing a source of disease

from the community. As we said in *Lakewood Park Cemetery Ass'n v. Metropolitan St. Louis Sewer Dist.*, 530 S.W.2d 240, 247 (Mo. banc 1975) (per curiam) quoting *Whitsett v. City of Carthage*, 270 Mo. 269, 193 S.W. 21, 24 (1917): " 'The public health is menaced and endangered by the aggregation of filth and refuse of the entire district, and is not limited to accumulations thereof upon or about each separate lot or tract of ground located therein.' " The same result requiring mandatory payment of waste disposal charges regardless of use has been reached in other jurisdictions. See *City of Glendale v. Trondsen*, 48 Cal.2d 93, 308 P.2d 1, 5–6 (banc 1957); *Cassidy v. City of Bowling Green*, 368 S.W.2d 318, 319–20 (Ky.1963); *City of Hobbs v. Chesport, Ltd.*, 76 N.M. 609, 417 P.2d 210, 214 (1966); *Borough of Coopersburg v. Cliff*, 16 D&C2d 576, 579 (Pa.Com.Pl.1958); *Owens v. City of Beresford*, 201 N.W.2d 890, 891, 894 (S.D. 1972).

■ "When a city is given the power to do a certain thing it is necessarily left with large discretion as to the method to be adopted and the manner in which it is to be done." *Wilhoit v. City of Springfield*, 237 Mo.App. 775, 171 S.W.2d 95, 98 (1943), citing *Arkansas-Missouri Power Corp. v. City of Kennett*, 348 Mo. 1108, 156 S.W.2d 913 (banc 1941); *City of Tarkio v. Cook*, 120 Mo. 1, 25 S.W. 202 (1894); *Ex parte Smith*, 231 Mo. 111, 132 S.W. 607 (1910). And there exists a presumption of reasonableness that attaches to such ordinances. *California Reduction Co. v. Sanitary Reduction Works*, 199 U.S. 306, 318–19, 26 S.Ct. 100, 50 L.Ed. 204 (1905); *Lakewood Park Cemetery Ass'n v. Metropolitan St. Louis Sewer Dist.*, 530 S.W.2d 240, 248 (Mo. banc 1975) (per curiam); *Bellerive Inv. Co. v. Kansas City*, 321 Mo. 969, 13 S.W.2d 628, 634–35, 639 (Mo.1929). Appellants have wholly failed to demonstrate the unreasonableness of the city's regulatory scheme.

Although there is some doubt whether the issue was properly pleaded and preserved, appellants also contend that the billing practices of the city violate the equal protection clauses of the United States Constitution. As evidence of this discrimination, they argue that a large industrial plant in the city was not billed and that while 1,849 residences and 327 commercial establishments were billed, the 1970 census shows 2,015 households in the city.

■ The equal protection clause as it applies to the exercise of the police power only requires that classifications established pursuant to this power be reasonable and bear a rational relation to the ends of the enactment. Mathematical nicety is not required. *Whitney v. California*, 274 U.S. 357, 369–70, 47 S.Ct. 641, 71 L.Ed. 1095 (1926); *State v. Ewing*, 518 S.W.2d 643, 646–47 (Mo.1975); *Bellerive Inv. Co. v. Kansas City*, 321 Mo. 969, 13 S.W.2d 628, 637–38 (Mo.1929).

■ Even assuming that the issue is properly before us, it does not follow from the facts presented by appellants that they have been the subjects of discrimination. Appellants have not demonstrated that the 1970 census figure of households bears any relation to the number of residences and commercial establishments billed by the city commencing in 1974 or that the residences and commercial establishments billed in 1974 and thereafter were irrationally or arbitrarily selected or classified.

■ Finally, appellants claim that the trial court improperly allowed the city to file its counterclaim for unpaid waste disposal charges on the day of trial. Contrary to their contention, appellants had notice of the city's claims against them. The parties stipulated that the city had billed appellants in the amount of $2.45 per month for solid waste service which appellants did not use and appellants brought suit to prevent the city from collecting the fees. Further, since payment is an affirmative defense, § 509.090, RSMo 1969, which appellants did not raise by their general denial to the city's counterclaim for unpaid charges, nonpayment was properly found on the pleadings.

Judgment affirmed.

All of the Judges concur.