Raymond D. **KLINE**, et ux., **Respondents,**

v.

**CITY OF KANSAS CITY, MISSOURI, Appellant.**

**No. WD 34242.**

Missouri Court of Appeals, Western District.

Jan. 31, 1984.

Richard N. Ward, City Atty., Walter J. O'Toole, Jr., Asst. City Atty., Kansas City, for appellant.

Jim Tom Reid, Shockley, Reid & Koger, Richard L. Martin, Kansas City, for respondents.

Before MANFORD, P.J., TURNAGE, C.J., and KENNEDY, J.

TURNAGE, Chief Judge.

Kline and his wife, Dorothy, filed suit against the City of Kansas City to cancel a special tax bill issued for the purpose of paying for sanitary sewers. The case was submitted on a stipulation of facts and the trial court entered judgment in favor of the Klines cancelling the tax bill.

The city contends the judgment is unsupported by the evidence. Reversed.

The Klines were the owners of Lot 13, Block 7, Chouteau Estates, a subdivision in Kansas City, located in Clay County. In July of 1973, the city established a sewer district which included the Kline tract as well as land located to its north. The drainage of the tract was from north to south with the Kline tract being on the southern edge of the tract. This meant, of course, that all of the land to the north of the Kline tract had to drain through the Klines' property.

In July of 1974, the city filed a condemnation suit seeking to obtain an easement to accommodate the sewer line running across the Kline lot. The Klines objected to the location of the easement, contending that it ran between their house and garage and necessitated severing utility lines and a sidewalk. The Klines filed a motion to dismiss the suit, and an evidentiary hearing followed. The court did not rule, however, since the city and the Klines subsequently agreed on another location for the easement which would not interfere with the Klines' use of the lot. As a result of this agreement the Klines voluntarily gave the city an easement over the new route. The condemnation suit was dismissed by the city.

In January of 1976, the city issued a tax bill against the Kline lot in the amount of $6,109.36 as the tract's owners' pro-rata share of the cost of sewers in the district. In March of 1976, the Klines filed this suit to cancel that bill.

■ The rules to apply to determine if the Klines are entitled to cancellation of the tax bill are well-established. In *Lakewood Park Cemetery Association v. Metropolitan St. Louis Sewer District*, 530 S.W.2d 240, 248[10] (Mo. banc 1975), the court held that the legislative determination of the necessity for installing sanitary sewers raises a presumption that the property in the district is benefited. The court further held that the burden of establishing the contrary rests upon the party attacking the bill. Also helpful in the resolution of the case before this court is the opinion in *Collins v. A. Jaicks Co.*, 279 Mo. 404, 214 S.W. 391, 394 (banc 1919). There the court quoted an earlier case to the effect that when the matter of establishing sewer districts is entrusted to a city council, a trial court may interfere with the decision of the council only when the council's act is so unreasonable, oppressive, or tainted with fraud as to clearly indicate that it has abused the power vested in it. Thus, the burden is on the Klines to show manifest fraudulent, unreasonable or oppressive action by the city in its decision to include the Kline tract within the sewer district. See also; *Sears v. City of Columbia*, 660 S.W.2d 238, 246[4, 5] (Mo. App.1983).

The Klines attempt to support their heavy burden by contending that the judgment was supported by substantial evidence. They point to a real estate agent's testimony offered in the hearing held on

the motion to dismiss the condemnation suit. A transcript of the testimony was attached to the stipulation of facts and made a part thereof. This witness stated that it would be "economically unfeasible" to further develop the Kline tract. The Kline tract consisted of two acres, less the South 195 feet which they had sold prior to the lawsuit. The Klines argued that since there was no evidence that their tract could be subdivided or developed to accommodate more than a single family residence, there was, therefore, no evidence that their land would be benefited by the sewers.

■ Aside from the fact that the standard of review is not a question of evidence to support the circuit court judgment, *Sears,* supra, the "economic feasibility" argument advanced by the Klines was rejected by the court in *Whitsett v. City of Carthage,* 270 Mo. 269, 193 S.W. 21 (1917). There the city sought to collect special tax bills issued against the land of Whitsett. Whitsett contended that his land was used solely for farming, not for development, and that it would not be developed in the foreseeable future. He contended, therefore, that he should not be required to pay any amount for sewers. The court rejected that argument by pointing out that the sewer was necessary for the preservation of the public health of the portion of the city it served. The court stated that the alternative to installing sewers would be to deposit sewage in underground vaults or on the surface and that, in any event, the result would be a continuing menace to the public health. The court stated that the deposit of raw sewage in parts of the city lying higher than the Whitsett property would damage the Whitsett property more than it would damage property above it. For that reason the court found that Whitsett's property benefited at least as much from the sewer as did property at higher elevations. The court further held that sewers confer benefits upon the people in an entire sewer district and actually benefit all real estate located therein because the land is made more desirable for business and residence purposes.

*Whitsett* was cited with approval in *Lakewood,* 530 S.W.2d at 247. The *Lakewood* court held that a special tax bill issued to pay for sewers was enforceable against a cemetery. The court stated that the cemetery improperly approached the question of benefits from the standpoint that only land which produces sewage is benefited by sewers. *Id.* at 247. The court reiterated the principal announced in *Whitsett,* stating that sanitary sewers exist for public health reasons, and that one of the consequences of their installation is the rise in property values which results from removal of filth known to cause disease. The court held the cemetery responsible for its pro-rata share of the cost of constructing the sewers within its district.

■ In this case, land to the north of the Klines' land had to drain southward, through the Klines' land. It is clear that the Klines' land benefits from the existence of sewers, since the alternative would be to allow the raw sewage to find its way on to the Kline land by operation of the law of gravity. The Klines advance the argument that simply because there was evidence that they could not subdivide their land, the conclusion that their land was not benefited and should not have been included in the sewer district naturally follows. In light of *Whitsett* and *Lakewood,* such an argument is untenable.

■ The Klines next contend that their land was included within the district only because the city desired to obtain an easement across their tract without cost. They claim that the original location of the easement, severing a sidewalk and utility lines, was wholly unreasonable and was selected solely for the purpose of coercing them to give an easement at the location ultimately chosen.

The Klines have not succeeded in proving that the location of the original easement was unreasonable. Rather, the evidence supported a finding that the proposed location was reasonable since it merely extended the existing sewer line down the center of North Elmwood Street which dead-ended at the southern border of the tract sold by

the Klines. The city took the defensible position that it was reasonable to continue that sewer line in a direct course because if North Elmwood Street were extended it would run along the line selected for the easement.

However, a better answer to the Klines' contention lies not in the reasonableness of extending the existing North Elmwood line, but in the fact that the couple acted voluntarily in granting the city an easement over another part of their lot. There is no contention that this easement was given as the result of coercion, fraud, or any other improper act. The only inference in the evidence is that the Klines voluntarily gave that easement to the city. If the Klines had not desired to give the easement, they could have required the city to condemn any easement it desired and could have submitted their case to a jury for the assessment of damage. Since they chose not to do so, the Klines are not now in a position to claim that the first location chosen by the city was selected for the purpose of forcing the Kline tract into the sewer district or to gain a free easement.

■ Kline also contends that the couple's land should not have been included in the sewer district because their house was already served by a private sewer which connected to public sewers. When the Klines purchased their original tract they were given the right to hook into public sewers serving property to the south. A long private sewer line connecting the Kline residence to the public sewers to the south was installed. The Klines' contention was answered in *Williams v. Hybskmann,* 247 S.W. 203 (Mo.App.1923), in which this court held that the establishment of private sewers before the city established public sewers in an area did not hamper the city in its power to serve the area. The fact that the Klines' house was served by a sewer did not deter the city from including the Kline tract in a sewer district.

■ Finally, the Klines contend that in the purchase of their land they were given, as part of the consideration, the right to hook up to the sewers serving the lots to the south. What has been said above concerning the right of the city to establish sewer districts even when land is served by a private sewer disposes of this contention. Further, since the city was not party to any agreement between the Klines and their seller, the city is not bound by any such agreement.

The evidence does not support the finding of the trial court that the inclusion of the Kline tract in the sewer district was arbitrary or unreasonable, or that it was tainted with fraud. Therefore, the Klines have not carried their burden of proof and the judgment cannot stand. See *Lakewood,* supra, and *Sears,* supra. This court holds that the tax bill issued against the Kline property is valid. The judgment is reversed and this cause is remanded with directions to enter judgment in favor of the city.

All concur.